IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| REAL MEX RESTAURANTS, INC., *et al.*, | ) | Case No. 11-13122 ( ) |
| | ) | |
| | ) | (Joint Administration Requested) |
| Debtors.[1] | ) | |
| | ) | |

## DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS: (I) PROHIBITING UTILITIES FROM DISCONTINUING, ALTERING OR REFUSING SERVICE; (II) ESTABLISHING PROCEDURES FOR DETERMINING ADEQUATE ASSURANCES OF PAYMENT; AND (III) ESTABLISHING PROCEDURES FOR UTILITIES TO OPT OUT OF PROPOSED ADEQUATE ASSURANCE PROCEDURES

1.  Real Mex Restaurants, Inc., a Delaware Corporation ("RMR"), and RMR's subsidiaries and other affiliates listed in footnote 1 below (collectively with RMR, the "Debtors"), hereby move the Court for entry of interim and final orders, under 11 U.S.C. §§ 105(a) and 366: (i) prohibiting utilities from altering, refusing or discontinuing service; (ii) establishing procedures for determining adequate assurance of payment; and (iii) establishing procedures for utilities to opt out of the Debtors' proposed procedures for adequate assurance (the "Motion"). Proposed interim and final orders are attached hereto as Exhibit B. and Exhibit C, respectively. Filed concurrently herewith, in support of the Motion, is the Declaration

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each of the Debtors' federal tax identification numbers, are: Real Mex Restaurants, Inc. (2902); RM Restaurant Holding Corp. (2217); Acapulco Mark Corp. (3570); Acapulco Restaurant of Downey, Inc. (2910); Acapulco Restaurant of Moreno Valley, Inc. (4606); Acapulco Restaurant of Ventura, Inc. (3626); Acapulco Restaurant of Westwood, Inc. (1162); Acapulco Restaurants, Inc. (4897); ALA Design, Inc. (8584); Chevys Restaurants, LLC (2992); CKR Acquisition Corp. (8287); El Paso Cantina, Inc. (0112); El Torito Franchising Company (2754); El Torito Restaurants, Inc. (7059); Murray Pacific (1596); Real Mex Foods, Inc. (8585); and TARV, Inc. (8081). The Debtors' headquarters and mailing address is: 5660 Katella Avenue, Suite 100, Cypress, CA 90630.

of Richard P. Dutkiewicz, the Chief Financial Officer of the Debtors (the "Dutkiewicz Declaration").

## Jurisdiction and Venue

2. On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (defined below) in this United States Bankruptcy Court for the District of Delaware (the "Court"). This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of these proceedings and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief requested herein are sections 105(a) and 363(b) of title 11 of the United States Code (as amended, the "Bankruptcy Code") and rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure.[2]

## Background

3. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or statutory committee has been appointed in these Chapter 11 cases.

4. The Debtors own and operate restaurants primarily under the trade names El Torito Restaurant, Chevys Fresh Mex, and Acapulco Mexican Restaurant y Cantina. As of June 26, 2011, the Debtors (a) operated 178 restaurants, of which 149 are located in California and the remainder in 11 other states, and (b) franchised or licensed 30 restaurants in ten states and two foreign countries. Debtor Real Mex Foods, Inc. ("RMF") provides production, purchasing and distribution services for the restaurant operations, and manufactures products for

---

[2] Unless otherwise stated, all "Section" references are to the Bankruptcy Code, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

sale to outside customers. Additional information regarding the business operations of the Debtors can be found in the Dutkiewicz Declaration.

5. Debtor RMR is a wholly owned subsidiary of Debtor RM Restaurant Holding Corp. ("Holdco"). A chart showing the ownership structure of the Debtors is included in the Dutkiewicz Declaration.

6. RMR is the borrower or issuer, and the other Debtors are guarantors, under several credit facilities (the "Credit Facilities"). Specifically, as of the Petition Date, the Debtors owed:

    a. approximately $37.4 million (of which $19.9 million constitutes contingent reimbursement obligations in connection with issued but undrawn letters of credit) under a senior secured credit facility that provides up to $17.5 million of revolving credit and $22.5 million of letter of credit availability;

    b. approximately $130 million under a senior secured notes issuance; and

    c. approximately $34.6 million under an unsecured credit facility.

7. Debtor Holdco separately owes approximately $38.8 million under an unsecured credit facility.

8. For calendar year 2011, through August 21, 2011, the Debtors had revenues of $315,453,000, which is a 3.17% reduction over the comparable period in the prior year. The drop in revenues is attributed principally to the closure of five restaurants and deterioration in customer traffic.

3

9.  As set forth in greater detail in the Dutkiewicz Declaration, in an attempt to develop a comprehensive debt restructuring plan, the Debtors have spent the last few months discussing with their principal creditors and equityholders the fact that the Debtors' capital structure requires significant deleveraging, and that such deleveraging, plus significant cost savings from renegotiating lease terms and closing some stores, is best accomplished in a chapter 11 bankruptcy case. As those discussions developed, it also became more clear that the deleveraging, and the preservation of the going concern value of the Debtors' businesses, may best be accomplished by the marketing of and sale of the Debtors' assets under the aegis of chapter 11. It is the Debtors' intention to use the chapter 11 process to do just that, and to consummate the overall restructuring through confirmation of a chapter 11 plan.

### Relief Requested

10.  Section 366(a) of the Bankruptcy Code prevents utility companies from discontinuing, altering or refusing service to a debtor during the first twenty (20) days of a bankruptcy case. However, thirty (30) days after the Petition Date, a utility company has the option of terminating its services, pursuant to section 366(c)(2) of the Bankruptcy Code, if a debtor has not furnished adequate assurance of payment. By this Motion the Debtors seek entry of interim and final orders:

   a.  approving the Debtors' proposed procedures for offering adequate assurance to their Utility Providers (as defined below) and determining (i) that upon payment of the Adequate Assurance Deposit (as defined below) the Utility Providers have been provided with adequate assurance of payment within the meaning of section 366 of the Bankruptcy Code, and (ii) that the Debtors are not required to provide any additional adequate assurance beyond what is proposed by this Motion, pending further order of the Court;

4

b.  approving the Debtors' proposed procedures whereby Utility Providers may request additional or different adequate assurance or may seek to opt out of the Debtors' proposed adequate assurance procedures; and

c.  prohibiting the Utility Providers from altering, refusing or discontinuing services on account of prepetition amounts outstanding or on account of any perceived inadequacy of the Debtors' proposed adequate assurance pending further order of the Court.

## The Utility Providers

11.  In the operation of their restaurants, the Debtors incur utility expenses for, among other things, water, sewer service, electricity, natural gas, steam, waste disposal, local and long-distance telephone service, cell phone service, cable television and internet. On average, the Debtors spend approximately $1.7 million each month on utility costs. These utility services are provided by approximately 325 Utility Providers, including those listed on the attached Exhibit A ("Utility Service List").[3] Uninterrupted utility services are essential to the ongoing operations of the Debtors' restaurants and, therefore, vital to the success of the Debtors' chapter 11 cases. Should any of the Utility Providers refuse or discontinue service, even for a brief period, the Debtors' business operations would be severely disrupted. Without electricity, natural gas and water services, for example, the Debtors would not be able to operate various equipment in their restaurants' kitchens, nor provide lighting, air conditioning or heating services for their restaurant facilities. Similarly, the timely and proper disposal of the waste that accumulates at the Debtors' restaurants is critical to ensure compliance with applicable health

---

[3] Although the Debtors believe that Exhibit A encompasses all entities that could qualify as a Utility Provider, the Debtors reserve the right to supplement the list if any Utility Provider has been omitted. The listing of an entity on Exhibit A is not an admission that any particular entity is a utility within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve the right to contest any such characterization in the future.

codes and keep the restaurants open. It is therefore critical that utility services continue uninterrupted. Accordingly, the Debtors fully intend to pay all postpetition obligations owed to the Utility Providers in a timely manner.

12. The Debtors propose providing adequate assurance to each Utility Provider by making a deposit equal to two (2) weeks of utility service, calculated as a historical average over the past twelve (12) months ("Adequate Assurance Deposit"), to each such Utility Provider who requests such a deposit in writing (the "Adequate Assurance Request"), provided that (i) such requesting Utility Provider does not already hold a deposit equal to or greater than two (2) weeks of utility services, (ii) such Utility Provider is not currently paid in advance for its services, or (iii) such Utility Provider has not already entered into an adequate assurance agreement with one or more of the Debtors in the period immediately preceding the Petition Date (collectively, the "Adequate Assurance Procedures"). As a condition of accepting an Adequate Assurance Deposit, the requesting Utility Provider shall be deemed to have stipulated that, upon payment of the Adequate Assurance Deposit, the Adequate Assurance Deposit constitutes adequate assurance of future payment to such Utility Provider within the meaning of section 366 of the Bankruptcy Code, and shall further be deemed to have waived any right to seek additional adequate assurance during the course of these Chapter 11 cases. Finally, the Utility Provider will be required to return the Adequate Assurance Deposit to the Debtors' estates within fifteen (15) days of the earlier to occur of (i) the consummation of any sale of all or substantially all of the Debtors' assets, (ii) any confirmed plan of reorganization or plan of liquidation, (iii) the closing of the utility account relating to such Adequate Assurance Deposit.

13. The Debtors submit that the Adequate Assurance Deposit, in conjunction with the Debtors' ability to pay for past and future utility services in the ordinary course of

6

DOCS_DE:173644.1 73521-001

codes and keep the restaurants open. It is therefore critical that utility services continue uninterrupted. Accordingly, the Debtors fully intend to pay all postpetition obligations owed to the Utility Providers in a timely manner.

12. The Debtors propose providing adequate assurance to each Utility Provider by making a deposit equal to two (2) weeks of utility service, calculated as a historical average over the past twelve (12) months ("Adequate Assurance Deposit"), to each such Utility Provider who requests such a deposit in writing (the "Adequate Assurance Request"), provided that (i) such requesting Utility Provider does not already hold a deposit equal to or greater than two (2) weeks of utility services, (ii) such Utility Provider is not currently paid in advance for its services, or (iii) such Utility Provider has not already entered into an adequate assurance agreement with one or more of the Debtors in the period immediately preceding the Petition Date (collectively, the "Adequate Assurance Procedures"). As a condition of accepting an Adequate Assurance Deposit, the requesting Utility Provider shall be deemed to have stipulated that, upon payment of the Adequate Assurance Deposit, the Adequate Assurance Deposit constitutes adequate assurance of future payment to such Utility Provider within the meaning of section 366 of the Bankruptcy Code, and shall further be deemed to have waived any right to seek additional adequate assurance during the course of these Chapter 11 cases. Finally, the Utility Provider will be required to return the Adequate Assurance Deposit to the Debtors' estates within fifteen (15) days of the earlier to occur of (i) the consummation of any sale of all or substantially all of the Debtors' assets, (ii) any confirmed plan of reorganization or plan of liquidation, (iii) the closing of the utility account relating to such Adequate Assurance Deposit.

13. The Debtors submit that the Adequate Assurance Deposit, in conjunction with the Debtors' ability to pay for past and future utility services in the ordinary course of

6

DOCS_DE:173644.1 73521-001

business (collectively, the "Proposed Adequate Assurance") from cash collateral and contemplated debtor-in-possession financing, constitutes sufficient adequate assurance to the Utility Providers.

## The Proposed Additional Adequate Assurance Procedures

14. In light of the severe consequences to the Debtors of any interruption in utility services, but recognizing the right of the Utility Providers to evaluate the Proposed Adequate Assurance on a case-by-case basis, the Debtors are proposing procedures that will incentivize the Debtors and Utility Providers to reach reasonable accommodations on any additional adequate assurance issues. If the Debtors and a Utility Provider cannot consensually resolve such issues, the Adequate Assurance Procedures provide that the Court will determine whether an additional adequate assurance payment is necessary and, if so, how much it should be before the Utility Provider may cease performance for failure of adequate assurance as follows:

   a. The Debtors will fax, email, serve by overnight mail or otherwise expeditiously send a copy of this Motion, together with the interim order, which includes the proposed procedures, and notice of the final hearing on the Motion to each Utility Provider within two (2) business days after the Court schedules the final hearing on the Motion.

   b. A Utility Provider desiring additional assurances of payment (i.e., in an amount in excess of the proposed Adequate Assurance Deposit) in the form of deposits, security or otherwise must serve a request (an "Additional Assurance Request") upon the Debtors at the following addresses: Real Mex Restaurants, Inc., 5660 Katella Avenue, Suite 100, Cypress, CA 90630, Attention: Sandy Ruelas; and Milbank, Tweed, Hadley & McCloy LLP, 601 South Figueroa Street, Suite 3000, Los Angeles, California 90017, Attention: Haig Maghakian, Esq.

7

c.  The Additional Assurance Request must be made within thirty (30) days of the Debtors' bankruptcy filing. If a Utility Company fails to timely file its request, it shall be (i) forbidden to discontinue, alter or refuse service on account of any unpaid prepetition charges, or require additional adequate assurance of payment other than the Proposed Adequate Assurance described in this Motion; and (ii) deemed to have received adequate assurance of payment in compliance with section 366 of the Bankruptcy Code.

d.  Any Additional Assurance Request must (i) be made in writing; (ii) set forth the location for which utility services are provided; (iii) include a summary of the Debtors' payment history relevant to the affected account(s), including any security deposits; and (iv) set forth why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

e.  Upon the Debtors' receipt of any Additional Assurance Request at the addresses set forth above, the Debtors shall have until the date that is the later of (i) fourteen (14) days from the receipt of such Additional Assurance Request or (ii) thirty (30) days from the Petition Date (collectively, the "Resolution Period") to negotiate with such Utility Provider to endeavor to resolve such Utility Provider's request for additional assurance of payment. During this period, Utility Providers may not terminate any of the services they provide to the Debtors on account of the bankruptcy filing or any unpaid charges for prepetition services.

f.  The Debtors may, in their discretion, resolve any Additional Assurance Request by mutual agreement with the Utility Provider and without further order of the Court, and may, in connection with any such agreement, in their discretion and with the consent of the DIP Agent (as defined in the *Interim Order (I) Authorizing Debtors to Obtain Postpetition Financing Pursuant to Section 364 of the Bankruptcy Code, (II) Authorizing the Use*

8

*of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (III) Granting Adequate Protection to the Prepetition Secured Parties Pursuant to Sections 361, 362, 363 and 364 of the Bankruptcy Code, (IV) Granting Liens and Superpriority Claims, (V) Modifying the Automatic Stay, and (VI) Scheduling a Final Hearing*), provide a Utility Provider with additional adequate assurance of future payment including, but not limited to, cash deposits, prepayments and/or other forms of security, without further order of this Court, if the Debtors believe such additional assurance is reasonable.

        g.      If the Debtors determine that the Additional Assurance Request is not reasonable and are not able to reach an alternative resolution with the Utility Provider during the Resolution Period, the Debtors, during or immediately after the Resolution Period, will request a hearing before this Court to determine the adequacy of assurances of payment with respect to a particular Utility Provider (the "<u>Determination Hearing</u>") pursuant to section 366(c)(3) of the Bankruptcy Code.

        h.      Pending resolution of any such Determination Hearing, such particular Utility Provider shall be restrained from discontinuing, altering, or refusing service to the Debtors on account of unpaid charges for prepetition services or the Debtors' bankruptcy filing. In most cases, the Debtors believe that the Utility Providers will conclude that any deposit in excess of the proposed Adequate Assurance Deposit is unnecessary. The Debtors have a good relationship with all of the Utility Providers based upon a long history of timely payments to these entities.

## Objections to the Motion

15.     Any Utility Provider who objects to the Procedures outlined above must file an objection to such Procedures (a "<u>Procedure Objection</u>") so that it is actually received by

9

DOCS_DE:173644.1 73521-001

the Debtors within twenty (20) days of entry of the order, at the following address: Real Mex Restaurants, Inc., 5660 Katella Avenue, Suite 100, Cypress, CA 90630, Attention: Sandy Ruelas; and Milbank, Tweed, Hadley & McCloy LLP, 601 South Figueroa Street, Suite 3000, Los Angeles, California 90017, Attention: Haig Maghakian, Esq. Any Procedure Objection must (i) be made in writing; (ii) set forth the location for which utility services are provided; (iii) include a summary of the Debtors' payment history relevant to the affected account(s), including any security deposits; (iv) set forth why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment; (v) set forth why the Utility Provider believes it should be exempted from the Procedures; and (vi) request that objections be heard on an expedited basis.

16. All Utility Providers who do not timely file a Procedure Objection shall be deemed to consent to the Procedures and shall be bound by the Procedures. The sole recourse of all Utility Providers who do not timely file a Procedure Objection shall be to submit an Additional Assurance Request pursuant to the Additional Adequate Assurance Procedures, and such Utility Providers shall be enjoined from ceasing performance pending any Determination Hearing that may be conducted pursuant to the Additional Adequate Assurance Procedures.

### Binding On All Utilities

17. The Debtors have made an extensive and good faith effort to identify their Utility Providers and include them on the Utility Service List. Nonetheless, it is possible that the Debtors have not yet identified or included certain Utility Providers on the Utility Service List. To the extent that the Debtors identify additional Utility Providers, the Debtors will file amendments to the Utility Service List, and shall serve copies of the Order on such newly-

DOCS_DE:173644.1 73521-001

identified Utility Providers. The Debtors request that the Order be binding on all Utility Providers, regardless of when such Utility Provider was added to the Utility Service List.

### Basis for Relief

18. Congress enacted section 366 of the Bankruptcy Code to protect debtors from utility service cutoffs upon a bankruptcy filing while, at the same time, providing utility companies with adequate assurance that the debtors will pay for postpetition services. See H.R. Rep. No. 95-595, at 350 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6306. Accordingly, section 366 protects debtors by enjoining utilities from altering, refusing or discontinuing services solely on account of unpaid prepetition amounts for a period of thirty (30) days after the bankruptcy filing. And it protects utilities by permitting them to alter, refuse or discontinue service after thirty (30) days if the debtor has not furnished "adequate assurance" of payment in a form "satisfactory" to the utility. Section 366 also restricts the factors that a court can consider when determining whether an adequate assurance payment is, in fact, adequate. Specifically, courts may no longer consider (i) the absence of a security deposit before the debtor's petition date, (ii) the debtor's history of timely payments or (iii) the availability of an administrative expense priority when determining the amount of a deposit. Notwithstanding these noteworthy changes, it does not appear that Congress intended to — or did — abrogate the bankruptcy court's right to determine the amount of adequate assurance necessary or change the fundamental requirement that assurance of payment must be "adequate."

19. While section 366(c) does limit the factors a court can consider when determining whether a debtor has provided adequate assurance of payment, it does not limit the court's ability to determine the amount of payment necessary, if any, to provide such adequate assurance. Instead, section 366(c) gives courts the same discretion in determining the amount of

11

payment necessary for adequate assurance as they previously had under section 366(b). Compare 11 U.S.C. § 366(b) (2005) ("On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance") with 11 U.S.C. § 366(c)(3)(A) (2005) ("On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2)"); see also Richard Levin & Alesia Ranney-Marinelli, The Creeping Repeal of Chapter 11: The Significant Business Provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 79 Am. Bankr. L.J. 603, 608-09 (2005) (stating that Courts would likely continue to determine the amount and form of adequate protection after the implementation of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005). Moreover, it is well established that section 366(b) permits a court to find that no adequate assurance payment at all is necessary to provide a utility with adequate assurance of payment. See In re Caldor, 117 F.3d 646, 650 (2d Cir. 1997) ("Even assuming that 'other security' should be interpreted narrowly, ... a bankruptcy court's authority to 'modify' the level of the 'deposit or other security' provided for under § 366(b), includes the power to require no 'deposit or other security' where none is necessary to provide a utility supplier with 'adequate assurance of payment'"). This may be particularly true in cases where the debtor has made prepetition deposits or prepayments for services that utilities will ultimately render postpetition. See 11 U.S.C. § 366(c)(1)(A)(v) (recognizing a prepayment for postpetition services as adequate assurance). Accordingly, courts continue to have discretion to determine the amount of adequate assurance payments and, where appropriate, to determine that no such payment is necessary.

12

20. Section 366(c), like section 366(b), simply requires that a utility's assurance of payment be "adequate." In re Caldor, 117 F.3d at 650 (2d Cir. 1997) (Section 366(b) "does not require an 'absolute guarantee of payment.'"); In re Adelphia Bus. Solutions. Inc., 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002) (accord); In re Steinebach, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) ("Adequate assurance of payment is not, however, absolute assurance ... all § 366(b) requires is that a utility receive only such assurance of payment as is necessary to protect its interests given the facts of the debtor's financial circumstances"). In determining the amount of adequate assurance, bankruptcy courts should "focus upon the need of the utility for assurance, and . . . require that the debtor supply *no more than that*, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." In re Caldor, 117 F.3d at 650 (2d Cir. 1997); see also In re Penn. Cent. Transp. Co., 467 F.2d 100, 103-04 (3d Cir. 1972) (affirming bankruptcy court's ruling that no utility deposits were necessary where such deposits would likely "jeopardize the continuing operating of the [debtor] merely to give further security to suppliers who already are reasonably protected"). Accordingly, demands by a utility for a guarantee of payment when they already have adequate assurance of payment in light of the Debtors' specific circumstances should be refused.

21. The proposed procedures set forth a fair process that will enable all parties to negotiate their respective positions and, where necessary, seek Court intervention without jeopardizing the Debtors' reorganization efforts. The proposed procedures allow the Debtors to negotiate or seek a hearing after the thirty (30)-day deadline set forth in section 366(c) where a Utility Provider does not submit its demand within sixteen (16) days of the filing. For example, where a Utility Provider files its request on the twentieth (20th) day, the Debtors will have fourteen (14) days — or until the thirty-fourth (34th) day after the filing — to negotiate with that

13

Utility Provider or to seek a court determination. The Debtors believe that this process is fair and necessary to avoid the situation where all of the Debtors' Utility Providers make last minute demands, leaving the Debtors without the ability to address those demands before services may be cutoff. If Utility Providers wish to have their matter determined within thirty (30) days of the bankruptcy filing, they need only file their request within sixteen (16) days thereof.

22. Courts have approved similar procedures in other Chapter 11 cases filed after the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. See, e.g., Nebraska Book Company, Inc., Case No. 11-12005 (PJW) (Bankr. D. Del. June 28, 2011); In re Appleseed's Intermediate Holdings LLC, Case No. 11-10160 (KG) (Bankr. D. Del. Feb. 17, 2011) (deeming utilities adequately assured where the debtor established a segregated account containing the aggregate estimated cost for two weeks of utility service); In re Local Insight Media Holdings, Inc., Case No. 10-13677 (KG) (Bankr. D. Del. Dec. 10, 2010) (same); In re U.S. Concrete, Inc., Case No. 10-11407 (PJW) (Bankr. D. Del. May 21, 2010) (same); In re Stallion Oilfield Servs. Ltd., Case No. 09-13562 (BLS) (Bankr. D. Del. Nov. 16, 2009) (same); In re Visteon Corp., Case No. 09-11786 (CSS) (Bankr. D. Del. June 19, 2009) (same); In re Masonite Corp., Case No. 09-10844 (PJW) (Bankr. D. Del. Apr. 14, 2009) (same); In re JL French Automotive Castings, Inc., Case No. 09-12445 (Bankr. D. Del. July 13, 2009) (approving adequate assurance of postpetition payment through deposit equal to two weeks of utility consumption based on historical average); In re WL Homes, LLC, Case No. 09-10571 (BLS) (Bankr. D. Del. February 19, 2009) (same); In re Mervyn's Holdings, LLC, Case No. 08-11586 (KG) (Bankr. D. Del. July 29, 2008) (approving adequate assurance of payment consisting of escrow of sum equal to 50% of estimated costs of monthly utility consumption); In re SemCrude, L.P., Case No. 08-11525 (BLS) (Bankr. D. Del. July 22, 2008) (approving adequate assurance of

payment consisting of escrow of sum equal to two weeks of monthly utility consumption); In re W. Nonwovens, Inc., Case No. 08-11435 (PJW) (Bankr. D. Del. July 14, 2008) (same); In re Progressive Molded Prods., Inc., Case No. 08-11253 (KJC) (Bankr. D. Del. June 20, 2008) (approving adequate assurance of payment consisting of escrow of sum equal to two weeks of monthly utility consumption); ACG Holdings, Inc., Case No. 08-11467 (CSS) (Bankr. D. Del. July 15, 2008) (approving, on an interim basis, adequate assurance of payment consisting of escrow of sum equal to 50% of estimated costs of monthly utility consumption); Tropicana Entm't, LLC, Case No. 08-10856 (KJC) (Bankr. D. Del. May 5, 2008) (approving adequate assurance consisting of deposit equal to the costs of two weeks of utility service for utility companies not already paid in advance or in possession of security deposits greater or equal that amount); In re Leiner Health Prods., Inc., Case No. 08-10446 (KJC) (Bankr. D. Del. Mar. 10, 2008) (adequate assurance of payment consisting of escrow of sum equal to 50% of estimated costs of monthly utility consumption); In re Global Motorsport Group, et al., Case No. 08-10192 (KJC) (Bankr. D. Del. February 1, 2008); In re Buffets Holdings, Inc., Case No. 08-10141 (MFW) (Bankr. D. Del. Jan. 22, 2008) (approving, on interim basis, adequate assurance of payment consisting of escrow of sum equal to 50% of estimated costs of monthly utility consumption); In re New Century TRS Holdings, Inc., Case No. 07-10416 (KJC) (Bankr. D. Del. Apr. 2, 2007) (deeming utilities adequately assured where debtor provided two-weeks deposit for utilities).

**Satisfaction Of Bankruptcy Rule 6003 And Waiver Of Bankruptcy Rule 6004**

23.     The Debtors submit that, because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein, Bankruptcy Rule 6003 has been satisfied.

24. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), to the extent these rules are applicable.

## Notice

25. Notice of this Motion has been provided to the following parties or, in lieu thereof, to their counsel, if known: (i) Office of the United States Trustee and (ii) the agents for the Credit Facilities. As this Motion is seeking first-day relief, notice of this Motion and any order entered hereon will be served on all parties as required by Local Rule 9013-1(m). The Debtors submit that, in light of the relief requested, no other or further notice need be provided.

## No Prior Request

26. No prior motion for the relief requested herein has been made to this or any other Court.

*[Remainder of the Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that the Court enter interim and final orders: (a) approving the Debtors' proposed procedures for offering adequate assurance to their Utility Providers and determining (i) that upon payment of the Adequate Assurance Deposit the Utility Providers have been provided with adequate assurance of payment within the meaning of section 366 of the Bankruptcy Code, and (ii) that the Debtors are not required to provide any additional adequate assurance beyond what is proposed by this Motion, pending further order of the Court; (b) approving the Debtors' proposed procedures whereby Utility Providers may request additional or different adequate assurance or may seek to opt out of the Debtors' proposed adequate assurance procedures; (c) prohibiting the Utility Providers from altering, refusing or discontinuing services on account of prepetition amounts outstanding or on account of any perceived inadequacy of the Debtors' proposed adequate assurance pending further order of the Court; and (d) granting such other and further relief as the Court deems appropriate.

Dated: October 4, 2011

                              MILBANK, TWEED, HADLEY & McCLOY LLP
                              Mark Shinderman (CA Bar No. 136644)
                              Fred Neufeld (CA Bar No. 150759)
                              Haig M. Maghakian (CA Bar No. 221954)
                              601 South Figueroa Street, 30th Floor
                              Los Angeles, CA 90017-5735
                              Telephone:    (213) 892-4000
                              Facsimile:    (213) 629-5063
                              Email: mshinderman@milbank.com
                                              fneufeld@milbank.com
                                              hmaghakian@milbank.com

                              and

PACHULSKI STANG ZIEHL & JONES LLP

/s/ Laura Davis Jones
Laura Davis Jones (DE Bar No. 2436)
Curtis A. Hehn (DE Bar No. 4264)
919 North Market Street, 17th Floor
Wilmington, Delaware 19899-8705
Telephone:   (302) 652-4100
Facsimile:   (302) 652-4400
Email: ljones@pszjlaw.com
         chehn@pszjlaw.com

Proposed Counsel for Debtors
and Debtors in Possession

18

DOCS_DE:173644.1 73521-001