IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| REAL MEX RESTAURANTS, INC., *et al.*, | ) | Case No. 11-13122 ( ) |
| | ) | |
| | ) | (Joint Administration Requested) |
| Debtors.[1] | ) | |
| | ) | |

**DEBTORS' MOTION FOR ORDER AUTHORIZING PAYMENT OF
SECTION 503(b)(9) CLAIMS AND CLAIMS INCURRED IN CONNECTION
WITH POSTPETITION DELIVERY OF GOODS AND SERVICES**

1. Real Mex Restaurants, Inc., a Delaware Corporation ("RMR"), and RMR's subsidiaries and other affiliates listed in footnote 1 below (collectively with RMR, the "Debtors"), hereby move the Court for entry of an order: (i) authorizing, but not requiring, the Debtors to pay all administrative expense claims arising under section 503(b)(9) of the Bankruptcy Code with respect to goods received by the Debtors in the ordinary course of business within the twenty day period immediately prior to the Petition Date; (ii) authorizing, but not requiring, the Debtors to pay their obligations for the postpetition delivery of goods and provision of services received due to prepetition orders made in the ordinary course of their business; and (iii) granting certain related relief (the "Motion"). A proposed order is attached hereto as Exhibit A. Filed concurrently herewith, in support of the Motion, is the Declaration of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each of the Debtors' federal tax identification numbers, are: Real Mex Restaurants, Inc. (2902); RM Restaurant Holding Corp. (2217); Acapulco Mark Corp. (3570); Acapulco Restaurant of Downey, Inc. (2910); Acapulco Restaurant of Moreno Valley, Inc. (4606); Acapulco Restaurant of Ventura, Inc. (3626); Acapulco Restaurant of Westwood, Inc. (1162); Acapulco Restaurants, Inc. (4897); ALA Design, Inc. (8584); Chevys Restaurants, LLC (2992); CKR Acquisition Corp. (8287); El Paso Cantina, Inc. (0112); El Torito Franchising Company (2754); El Torito Restaurants, Inc. (7059); Murray Pacific (1596); Real Mex Foods, Inc. (8585); and TARV, Inc. (8081). The Debtors' headquarters and mailing address is: 5660 Katella Avenue, Suite 100, Cypress, CA 90630.

Richard P. Dutkiewicz, the Chief Financial Officer of the Debtors (the "Dutkiewicz Declaration").

## Jurisdiction and Venue

2. On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (defined below) in this United States Bankruptcy Court for the District of Delaware (the "Court"). This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of these proceedings and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief requested herein are sections 105(a) and 363(b) of title 11 of the United States Code (as amended, the "Bankruptcy Code") and rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure.[2]

## Background

3. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or statutory committee has been appointed in these Chapter 11 cases.

4. The Debtors own and operate restaurants primarily under the trade names El Torito Restaurant, Chevys Fresh Mex, and Acapulco Mexican Restaurant y Cantina. As of June 26, 2011, the Debtors (a) operated 178 restaurants, of which 149 are located in California and the remainder in 11 other states, and (b) franchised or licensed 30 restaurants in ten states and two foreign countries. Debtor Real Mex Foods, Inc. ("RMF") provides production, purchasing and distribution services for the restaurant operations, and manufactures products for

---

[2] Unless otherwise stated, all "Section" references are to the Bankruptcy Code, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

sale to outside customers. Additional information regarding the business operations of the Debtors can be found in the Dutkiewicz Declaration.

5.  Debtor RMR is a wholly owned subsidiary of Debtor RM Restaurant Holding Corp. ("Holdco"). A chart showing the ownership structure of the Debtors is included in the Dutkiewicz Declaration.

6.  RMR is the borrower or issuer, and the other Debtors are guarantors, under several credit facilities (the "Credit Facilities"). Specifically, as of the Petition Date, the Debtors owed:

   a.  approximately $37.4 million (of which $19.9 million constitutes contingent reimbursement obligations in connection with issued but undrawn letters of credit) under a senior secured credit facility that provides up to $17.5 million of revolving credit and $22.5 million of letter of credit availability;

   b.  approximately $130 million under a senior secured notes issuance; and

   c.  approximately $34.6 million under an unsecured credit facility.

7.  Debtor Holdco separately owes approximately $38.8 million under an unsecured credit facility.

8.  For calendar year 2011, through August 21, 2011, the Debtors had revenues of $315,453,000, which is a 3.17% reduction over the comparable period in the prior year. The drop in revenues is attributed principally to the closure of five restaurants and deterioration in customer traffic.

9. As set forth in greater detail in the Dutkiewicz Declaration, in an attempt to develop a comprehensive debt restructuring plan, the Debtors have spent the last few months discussing with their principal creditors and equityholders the fact that the Debtors' capital structure requires significant deleveraging, and that such deleveraging, plus significant cost savings from renegotiating lease terms and closing some stores, is best accomplished in a chapter 11 bankruptcy case. As those discussions developed, it also became more clear that the deleveraging, and the preservation of the going concern value of the Debtors' businesses, may best be accomplished by the marketing of and sale of the Debtors' assets under the aegis of chapter 11. It is the Debtors' intention to use the chapter 11 process to do just that, and to consummate the overall restructuring through confirmation of a chapter 11 plan.

### Relief Requested

**B.     Payment of 503(b)(9) Claims**

10. As the operators of a multi-unit restaurant chain, the Debtors, in the ordinary course of their business, receive various goods, including restaurant specialty items and food products on a daily basis. Many of these goods are used by the Debtors in the preparation of the Debtors' various menu items that are served to the Debtors' customers later that same day. Thus, the uninterrupted supply of these goods is essential to the Debtors' business operations.

11. The Debtors believe that certain of the vendors and suppliers who delivered goods to the Debtors during the twenty-day period prior to the Petition Date but have not received payment for such goods (the "503(b)(9) Claimants") likely will seek the allowance and payment of those claims (the "503(b)(9) Claims") through individual motions to this Court. As a result, the 503(b)(9) Claimants, the Debtors and other parties in interest will be forced to divert resources in these cases toward drafting, filing, prosecuting and defending such individual motions and related responses. The Debtors believe such motion practice is an unnecessary

burden on the estates and seek authority to pay such claims in the ordinary course of business. The requested relief will have a positive effect on the ability of the Debtors to access favorable trade terms and ensure the uninterrupted supply of goods to the restaurants. The Debtors estimate that the amount owing to 503(b)(9) Claimants for goods delivered in the twenty days prior to the Petition Date is approximately $5 million.

C.    **Payment for Goods and Services Delivered Postpetition Under Prepetition Purchase Orders**

12.    As of the Petition Date, the Debtors had outstanding prepetition purchase orders (collectively, the "Purchase Orders") with certain suppliers (collectively, the "Suppliers") for critical goods and services. The delivery of such goods and services by the Suppliers is essential to the continued operation of the Debtors' businesses. However, as a result of the commencement of these chapter 11 cases, Suppliers may perceive a risk that they will be treated as prepetition general unsecured creditors for the cost of any shipments made or services provided pursuant to the Purchase Orders, and may refuse to deliver such goods to the Debtors or provide such services to the Debtors unless the Debtors issue substitute postpetition purchase orders or provide other assurances of payment. The revised postpetition purchase orders may, however, include trade terms less favorable than the terms in existing Purchase Orders. Alternatively, some Suppliers may refuse to do business with the Debtors after the Petition Date due to the failure to honor the existing Purchase Orders, thereby forcing the Debtors to find alternate suppliers with less favorable trade terms.

13.    Requiring the Debtors to issue substitute purchase orders on a postpetition basis also would be administratively burdensome, time-consuming, and counterproductive to the Debtors' chapter 11 cases, and would inevitably lead to delays in the Debtors' receipt of goods and services, ultimately resulting in the disruption of the Debtors' businesses.

14. Under these circumstances, relief is needed to permit the Debtors to pay for the timely delivery of goods and uninterrupted provision of services from the Suppliers pursuant to the Purchase Orders. Accordingly, the Debtors seek entry of an order authorizing, but not directing, the Debtors to pay the Suppliers under any prepetition Purchase Orders for (a) shipments of goods delivered to the Debtors on and after the Petition Date and (b) the provision of services to the Debtors on and after the Petition Date. The Debtors estimate that the Suppliers will be owed approximately $3 million for goods and services delivered after the Petition Date pursuant to the Purchase Orders.

15. If the Motion is granted, then in connection with the payment of 503(b)(9) Claims and Purchase Orders, the Debtors reserve the right to require each 503(b)(9) Claimant and/or Supplier to agree to (a) continue to supply goods and services to the Debtors post petition on trade terms substantially similar or better than those provided to the Debtors prior to the Petition Date, (b) execute a written acknowledgement that provides that any future purchase orders will be subject to the agreed trade terms, (c) remove any mechanics' liens, possessory liens, or similar state law trade liens obtained from the 503(b)(9) Claims and/or Purchase Orders, (d) submit to the Court's jurisdiction in resolving all disputes arising under or related to the payment of the 503(b)(9) Claim or Purchase Order, and (e) certain other similar provisions as agreed between the Debtors and each 503(b)(9) Claimant or Supplier.

16. The relief sought herein is consistent with the applicable provisions of the Bankruptcy Code. The 503(b)(9) Claims are administrative expenses and should be payable in the ordinary course if appropriate in the Debtors' business judgment, inasmuch as such payments encourage vendors to continue business with the Debtors after the Petition Date and provide the Debtors with the best terms of sale possible. Similarly, obligations arising out of the postpetition

delivery of goods and the provision of services to the Debtors are expenses generally incurred for the benefit of the Debtors' estates.

## Basis For Relief

### A. Immediate Payment of 503(b)(9) Claims is Justified

17. Section 503(b)(9) does not establish the timing by which a claim allowed under such Section must be paid. See In re Bookbinders' Restaurant, Inc., No. 06-12302, 2006 WL 3858020, at *4 (Bankr. E.D. Pa., Dec. 28, 2006) (finding that "[t]he text of 503(b)(9) neither states nor even implies that allowance of the expense encompasses an unqualified right to immediate payment ... [n]or does the text of the provision suggest that an administrative expense allowed under § 503(b)(9) is to be treated in a more favorable manner than any other allowed § 503(b) administrative expense"); see also In re Global Home Products, LLC, No. 06-10340 (KG), 2006 WL 3791955, at *3 (Bankr. D. Del., Dec. 21, 2006) (noting that "Section 503(b)(9) 'is a rule of priority, rather than payment'" (citations omitted)). In Global Home, the Court rejected a motion for immediate payment of a section 503(b)(9) claim. In so doing, the Court explained that "Section 503 does not specify a time for payment of [administrative] expenses but administrative expenses must be paid in full on the effective date of the plan...." 2006 WL 3791955, at *3.

18. In determining the propriety of early payment of a 503(b)(9) claim, courts have looked to several factors: (1) prejudice to the debtor; (2) hardship to the claimant; and (3) potential detriment to other creditors. See In re Garden Ridge Corp., 323 B.R. 136, 143 (Bankr. D. Del. 2005); see also In re Global Home Products, LLC, 2006 WL 3791955, at *5 (holding that the proper exercise of its discretion required the Court to deny the motion for immediate payment under section 503(b)(9) because "prejudice to Debtors of requiring

immediate payment far outweigh[ed] the prejudice, if any, to [the creditor] and Debtors' other creditors....") The Debtors should be authorized to determine, in the exercise of their business judgment, that certain 503(b)(9) Claims should be paid now to allow the Debtors' business to continue purchasing goods from a number of unaffiliated, third-party vendors on payment and other terms that are equally or more favorable than those terms available to Debtors prior to the Petition Date. Other creditors will not be prejudiced by payment of certain 503(b)(9) claims prior to confirmation of a plan because (a) all such allowed administrative claims would be payable in connection with any confirmed plan of reorganization and/or plan of liquidation pursuant to section 1129, and (b) the Debtors will require those Creditors that obtain accelerated payment of their allowed 503(b)(9) Claims to provide acceptable trade terms to the appropriate Debtor, in the Debtors' sole discretion. Providing the Debtors with a tool to assist them in securing more favorable trade terms will help maximize the value of the estate as it will allow the Debtors to more efficiently and effectively operate their business.

19.     Similar relief to that requested herein has been granted in other chapter 11 cases in this District and elsewhere. See, e.g., In re Goldcoast Liquidating LLC, et al., Case No. 10-12819 (KG) (Bankr. D. Del. Oct 6. 2010); In re Premier International Holdings, et al., Case No. 09-12019 (CSS) (Bankr. D. Del. June 13, 2009); In re Linens Holding Co., Case No. 08-10832 (CSS) (Bankr. D. Del. May 28, 2008) (authorizing, among other things, administrative expense priority status for postpetition deliveries of suppliers and vendors and the payment of undisputed obligations arising there from in the ordinary course of business); In re Sharper Image Corp., Case No. 08-10322 (KG) (Bankr. D. Del. Feb. 20, 2008) (same); In re Buffets Holdings, Inc., Case No. 08-10141 (MFW) (Bankr D. Del. Feb. 13, 2008) (same); In re ONCO Inv. Co., Case No. 04-10558 (JBR) (Bankr. D. Del. Feb. 24, 2004) (same); In re Kaiser

Aluminum Corp., Case No. 02-10429 (JKF) (Bankr. D. Del. Feb. 13, 2002) (same); In re Brown & Cole Stores, LLC, Case No. 06-13950 (SJS) (9th Cir. B.A.P. 2007) (affirming administrative expense priority of section 503(b)(9) claim); In re First Magnus Fin. Corp., Case No. 07-01578 (JMM) (Bankr. D. Ariz. 2007) (same).

## B.   Payment of Postpetition Suppliers of Goods and Services under Prepetition Purchase Orders is Appropriate

20.   Under the provisions of Bankruptcy Code section 503(b)(1)(A), undisputed obligations that arise in connection with the postpetition delivery of goods to the Debtors are, upon acceptance, arguably, administrative expenses. Although the Debtors believe that they therefore may have the authority to make payment for any goods received postpetition (irrespective of the time the orders were first placed), confirmation of that authority is appropriate and necessary. The Debtors' relationship with their Suppliers is so essential that it is important to give the Suppliers the utmost reassurance that their valid claims will be given administrative expense priority status, and that they will continue to be paid by the Debtors in the ordinary course of business. Furthermore, any attempt by the Suppliers to interrupt goods in transit will create unanticipated supply shortages and restaurant closures detrimental to the going concern value of the Debtors' business.

21.   Absent the relief requested in this motion, the Debtors would be required to expend substantial time and resources convincing Suppliers of the Debtors' authority to make certain payments, reissuing Purchase Orders, and/or establishing the Debtors' right to retain the goods supplied under the Purchase Orders. The disruption in the supply of goods and services to the estate could significantly hinder the Debtors' operations and subject the Debtors to tremendous expense. Without the goods and services supplied through the Purchase Orders, the Debtors' would not be able to run their restaurants with the same offerings or service that they

were able to provide before the Petition Date. Due to the nature of the Debtors' business, the continued patronage of the Debtors' customers, including the need to generate repeat visits, is critical to the ongoing operations of the Debtors' businesses. If the Debtors' customers were to stop patronizing the Debtors restaurants due to diminished offerings or declining service, the Debtors opportunity to preserve the value of their assets would be jeopardized.

22.     Given the nature of the Debtors' operations, the volume of goods and services consumed in the Debtors' daily operations, and the potential impact of any interruption in the flow of goods and services to the Debtors, the Debtors have a clear need to honor the Purchase Orders from the Suppliers. Accordingly, the Debtors request the relief set forth herein.

### Satisfaction Of Bankruptcy Rule 6003 And Waiver Of Bankruptcy Rule 6004

23.     The Debtors submit that, because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein, Bankruptcy Rule 6003 has been satisfied.

24.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), to the extent these rules are applicable.

### Notice

25.     Notice of this Motion has been provided to the following parties or, in lieu thereof, to their counsel, if known: (i) Office of the United States Trustee, and (ii) the agents for the Credit Facilities. As this Motion is seeking first-day relief, notice of this Motion and any order entered hereon will be served on all parties as required by Local Rule 9013-1(m). The Debtors submit that, in light of the relief requested, no other or further notice need be provided.

## No Prior Request

26. No prior motion for the relief requested herein has been made to this or any other court.

*[Remainder of the Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request the entry of an order (a) authorizing, but not requiring, the Debtors to pay all administrative expense claims arising under section 503(b)(9) of the Bankruptcy Code with respect to goods received by the Debtors in the ordinary course of business within the twenty day period immediately preceding the Petition Date (as such term is defined herein); (b) authorizing, but not requiring, the Debtors to pay their obligations for the postpetition delivery of goods and provision of services received due to prepetition orders made in the ordinary course of their business, substantially in the form attached hereto, (c) granting such other and further relief as may be just and proper.

Dated: October 4, 2011

MILBANK, TWEED, HADLEY & McCLOY LLP
Mark Shinderman (CA Bar No. 136644)
Fred Neufeld (CA Bar No. 150759)
Haig M. Maghakian (CA Bar No. 221954)
601 South Figueroa Street, 30th Floor
Los Angeles, CA 90017-5735
Telephone:    (213) 892-4000
Facsimile:    (213) 629-5063
Email: mshinderman@milbank.com
          fneufeld@milbank.com
          hmaghakian@milbank.com

and

PACHULSKI STANG ZIEHL & JONES LLP

/s/ Laura Davis Jones
Laura Davis Jones (DE Bar No. 2436)
Curtis A. Hehn (DE Bar No. 4264)
919 North Market Street, 17th Floor
Wilmington, Delaware 19899-8705
Telephone:    (302) 652-4100
Facsimile:    (302) 652-4400
Email: ljones@pszjlaw.com
          chehn@pszjlaw.com

Proposed Counsel for Debtors
and Debtors in Possession

DOCS_DE:173636.1