## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| REAL MEX RESTAURANTS, INC. *et al.,*[1] | Case No. 11-13122 (\_\_\_\_) |
| Debtors. | Joint Administration Pending |

**INTERIM ORDER (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE, (II) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE, (III) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES PURSUANT TO SECTIONS 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE, (IV) GRANTING LIENS AND SUPERPRIORITY CLAIMS, (V) MODIFYING AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING**

Upon the motion, dated October 4, 2011 (the "DIP Motion"), of the DIP Borrowers (as defined below), and the other debtors and debtors-in-possession (collectively, the "Debtors"), in the above-referenced chapter 11 cases (the "Cases"), seeking entry of an interim order (this "Interim Order") pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 364(c)(l), 364(c)(2), 364(c)(3), 364(d)(l), 364(e), 507, and 552 of chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), that, among other things:

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each of the Debtors' federal tax identification numbers, are: Real Mex Restaurants, Inc. (2902); RM Restaurant Holding Corp. (2217); Acapulco Mark Corp. (3570); Acapulco Restaurant of Downey, Inc. (2910); Acapulco Restaurant of Moreno Valley, Inc. (4606); Acapulco Restaurant of Ventura, Inc. (3626); Acapulco Restaurant of Westwood, Inc. (1162); Acapulco Restaurants, Inc. (4897); ALA Design, Inc. (8584); Chevys Restaurants, LLC (2992); CKR Acquisition Corp. (8287); El Paso Cantina, Inc. (0112); El Torito Franchising Company (2754); El Torito Restaurants, Inc. (7059); Murray Pacific (1596); Real Mex Foods, Inc. (8585); and Tarv Incorporated (8081). The Debtors' headquarters and mailing address is: 5660 Katella Avenue, Cypress, CA 90630.

(i)     authorizes the Debtors designated as "Borrowers" under, and as defined in, the DIP Credit Agreement (as defined below) (collectively, the "DIP Borrowers") to obtain, and the Parent (as defined below) and the other guarantors (the "DIP Guarantors") under the DIP Loan Documents (as defined below) to unconditionally guaranty, jointly and severally, the DIP Borrowers' obligations in respect of, senior secured priming and superpriority postpetition financing, which if approved on a final basis, would consist of (i) a letter of credit facility for up to $20,000,000 (the "LC Facility") and (ii) a revolving credit facility for up to $29,000,000 (the "Revolver Facility," and together with the LC Facility, the "DIP Facility") pursuant to the terms of (x) this Interim Order, (y) that certain Senior Secured Priming and Superpriority Revolving Credit Agreement, dated as of the Petition Date (as the same may be amended, restated, supplemented, or otherwise modified from time to time in accordance with its terms, the "DIP Credit Agreement"),[2] by and among the DIP Borrowers, the DIP Guarantors, General Electric Capital Corporation ("GECC"), as administrative agent and collateral agent (in such capacity, the "DIP Agent"), and GE Franchise Finance Commercial LLC and the other financial institutions party to the DIP Credit Agreement as "Lenders" under, and as defined in, the DIP Credit Agreement (the "DIP Lenders," and together with the DIP Agent and any other party to which DIP Obligations (as defined below) are owed, the "DIP Secured Parties"), in substantially the form attached to the DIP Motion, and (z) any and all other Loan Documents (as defined in the DIP Credit Agreement, and together with the DIP Credit Agreement, collectively, the "DIP Loan Documents"), to: (A) fund, among other things, ongoing working capital, general corporate expenditures, letters of credit and other financing needs of the Debtors, (B) subject to entry of a Final Order (as defined below), convert all outstanding Prepetition First Lien Obligations (as

---

[2] Unless otherwise specified, all capitalized terms used herein without definition shall have the respective meanings given to such terms in the DIP Credit Agreement. A copy of the DIP Credit Agreement is attached hereto as Exhibit B.

2

defined below) to DIP Obligations subject to such Final Order and the DIP Loan Documents, (C) grant, as of the Petition Date and in accordance with the relative priorities set forth herein, certain adequate protection to the Prepetition First Lien Secured Parties and to the Prepetition Second Lien Secured Parties (each term as defined below) as described below, (D) pay certain transaction fees and other costs and expenses of administration of the Cases, and (E) pay fees and expenses (including, without limitation, reasonable attorneys' fees and expenses) owed to the DIP Agent and the DIP Lenders under the DIP Loan Documents and this Interim Order;

(ii)     approves the terms of, and authorizes the Debtors to execute and deliver, and perform under, the DIP Credit Agreement and the other DIP Loan Documents and to perform such other and further acts as may be required in connection with the DIP Loan Documents and this Interim Order;

(iii)     grants (x) to the DIP Agent, for the benefit of itself and the other DIP Secured Parties, Liens (as defined in the DIP Credit Agreement) on all of the DIP Collateral (as defined below) pursuant to sections 364(c)(2), (c)(3) and (d) of the Bankruptcy Code, which Liens shall be senior to the Primed Liens (as defined below) and shall be junior solely to any valid, enforceable and non-avoidable Liens that are (A) in existence on the Petition Date, (B) either perfected as of the Petition Date or perfected subsequent to the Petition Date solely to the extent permitted by section 546(b) of the Bankruptcy Code, and (C) senior in priority to the Prepetition First Liens (as defined below) after giving effect to any intercreditor or subordination agreement (all such liens, collectively, the "Prepetition Prior Liens") and (y) to the DIP Secured Parties pursuant to section 364(c)(1) of the Bankruptcy Code superpriority administrative claims having recourse to all prepetition and postpetition property of the Debtors' estates, now owned or

hereafter acquired, including any Debtors' rights under section 506(c) of the Bankruptcy Code and the proceeds thereof;

(iv)     authorizes the Debtors to use "cash collateral," as such term is defined in section 363 of the Bankruptcy Code (the "Cash Collateral"), including, without limitation, Cash Collateral in which the Prepetition Secured Parties (as defined below) and/or the DIP Secured Parties have a Lien or other interest, in each case whether existing on the Petition Date, arising pursuant to this Interim Order or otherwise, and provides the Prepetition Secured Parties (as defined below) the Prepetition Secured Parties' Adequate Protection (as defined below) as set forth herein;

(v)     vacates the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and this Interim Order;

(vi)     authorizes the DIP Borrowers at any time prior to the earliest to occur of 11:59 p.m. prevailing Eastern time on November 4, 2011 (the "Interim Period Outside Date") and the entry of the Final Order (as defined herein) to borrow under the DIP Facility and use Cash Collateral (as defined below) in an aggregate outstanding principal amount not to exceed $5,000,000, and authorizes the Guarantors to unconditionally guaranty such obligations jointly and severally;

(vii)     schedules a final hearing on the DIP Motion to be held on or prior to the Interim Period Outside Date (the "Final Hearing") to consider entry of a final order which grants all of the relief requested in the DIP Motion on a final basis and which final order shall be in form and substance (including with respect to any subsequent modifications to the form or substance made

in response to objections of other creditors[3] or the Court) acceptable to the DIP Agent (the "Final Order"); and

(viii) waives any applicable stay (including under Bankruptcy Rule 6004) and provides for immediate effectiveness of this Interim Order.

Having considered the DIP Motion, the DIP Credit Agreement, the Declaration of Michael Jerbich in support of the DIP Motion (the "Jerbich Declaration"), the Declaration of Marc A. Bilbao in support of the DIP Motion (the "Bilbao Declaration" and, together with the Jerbich Declaration, the "DIP Motion Declarations"), the Declaration of Richard P. Dutkiewicz, Executive Vice President and Chief Financial Officer of the Debtors, in Support of First Day Motions, and the evidence submitted or proferred at the hearing on this Interim Order (the "Interim Hearing"); and in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d) and 9014 and all applicable Local Rules, notice of the DIP Motion and the Interim Hearing having been provided pursuant to Bankruptcy Rule 4001(b)(1)(C); an Interim Hearing having been held and concluded on _____, 2011; and it appearing that approval of the interim relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the Debtors pending the Final Hearing and otherwise is fair and reasonable and in the best interests of the Debtors, their creditors, their estates and all parties in interest, and is essential for the continued operation of the Debtors' business; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[4]**

---

[3] Nothing herein permits a creditor to file any objection prohibited by the Intercreditor Agreement (as defined below).

[4] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, as appropriate, pursuant to Bankruptcy Rule 7052.

A.    **Petition Date**.  On October 4, 2011 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (this "Court").  The Debtors have continued in the management and operation of their businesses and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No statutory committee of unsecured creditors (to the extent such committee is appointed, the "Committee"), trustee, or examiner has been appointed in the Cases.

B.    **Jurisdiction and Venue**.  This Court has core jurisdiction over the Cases, the DIP Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue for the Cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 364, 507 and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014 and the Local Rules.

C.    **Notice**.  The Interim Hearing is being held pursuant to the authorization of Bankruptcy Rule 4001.  Notice of the Interim Hearing and the emergency relief requested in the DIP Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, to certain parties in interest, including: (i) the Office of the United States Trustee for the District of Delaware (the "United States Trustee"), (ii) those entities or individuals included on the Debtors' list of 20 largest unsecured creditors on a consolidated basis, (iii) counsel to the Prepetition First Lien Secured Agent (as defined below), (iv) the Prepetition First Lien Secured Agent, (v) the DIP Agent, (vi) counsel to the DIP Agent, (vii) the Prepetition Second Lien Trustee (as defined below), (viii) counsel to the Prepetition Second Lien Trustee, (ix) counsel to the Majority Prepetition Second Lien Secured Noteholders (as defined

below), (x) Wilmington Trust National Association, as administrative agent (the "Unsecured Prepetition Agent") under that certain Second Amended and Restated Credit Agreement, dated as of July 7, 2009, by and among Real Mex (as defined below), the Parent (as defined below), the lenders party thereto, and Wilmington Trust National Association (successor administrative agent to Credit Suisse, Cayman Island Branch), and (xi) counsel to the Unsecured Prepetition Agent. Under the circumstances, such notice of the DIP Motion, the relief requested therein and the Interim Hearing complies with Bankruptcy Rule 4001(b), (c) and (d) and the Local Rules, and no other notice need be provided for entry of this Interim Order.

> D. **Debtors' Stipulations Regarding the Prepetition Secured Credit Facility**. Without prejudice to the rights of parties in interest to the extent set forth in Paragraph 7 below, the Debtors admit, stipulate, acknowledge, and agree (Paragraphs D and E hereof shall be referred to herein collectively as the "Debtors' Stipulations") as follows:

>> (i) Prepetition First Lien Secured Credit Facility. Pursuant to that certain Second Amended and Restated Revolving Credit Agreement, dated as of January 29, 2007 (as amended, restated or otherwise modified from time to time prior to the Petition Date, the "Prepetition First Lien Secured Credit Agreement," collectively with any other agreements and documents executed or delivered in connection therewith, including, without limitation, the "Loan Documents" as defined therein, each as may be amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition First Lien Loan Documents"), among (a) Real Mex Restaurants, Inc., formerly known as Acapulco Acquisition Corp. ("Real Mex"), Acapulco Restaurants, Inc. ("ARI"), El Torito Franchising Company ("ETFI"), El Torito Restaurants, Inc. ("ETRI"), TARV, Inc. ("TARV"), Acapulco Restaurant of Ventura, Inc. ("ARV"), Acapulco Restaurant of Westwood, Inc. ("ARW"), Acapulco Mark Corp. ("AMC"),

Murray Pacific ("MP"), ALA Design, Inc. ("ALAD"), Real Mex Foods, Inc., formerly known as ALA Foods, Inc. ("RMF"), Acapulco Restaurant of Downey, Inc. ("ARD"), Acapulco Restaurant of Moreno Valley, Inc. ("AMV"), El Paso Cantina, Inc. ("EPC"), CKR Acquisition Corp. ("CKR"), and Chevys Restaurants, LLC ("Chevys"), as borrowers (collectively, the "Borrowers"), (b) GE Franchise Finance Commercial LLC ("GE Franchise") (by assignment from General Electric Capital Corporation) and the other financial institutions party thereto, as "Lenders" (collectively, with GE Franchise, the "Prepetition First Lien Secured Lenders"), and (c) General Electric Capital Corporation, as administrative agent and collateral agent ( in such capacities, the "Prepetition First Lien Secured Agent" and, together with the Prepetition First Lien Secured Lenders and any other party to which Prepetition First Lien Obligations (as defined below) are owed, the "Prepetition First Lien Secured Parties"), the Prepetition First Lien Secured Parties agreed to extend loans and other financial accommodations to, and issue letters of credit for the account of, the Borrowers pursuant to the Prepetition First Lien Secured Credit Agreement. Pursuant to an Amended and Restated Guaranty, dated as of January 29, 2007 (as amended, restated and otherwise modified in accordance with its terms, the "Parent Guaranty"), RM Restaurant Holding Corp. (the "Parent") unconditionally guaranteed the Borrowers' obligations under the Prepetition First Lien Loan Documents. All obligations of the Debtors arising under the Prepetition First Lien Secured Credit Agreement (including, without limitation, the "Obligations" as defined therein) or the other Prepetition First Lien Loan Documents shall collectively be referred to herein as the "Prepetition First Lien Obligations."

> (ii) <u>Prepetition First Liens and Prepetition Collateral.</u> Pursuant to the Security Documents (as defined in the Prepetition First Lien Secured Credit Agreement) (as such documents are amended, restated, supplemented, or otherwise modified from time to time prior

to the Petition Date, the "Prepetition First Lien Collateral Documents"), by and between each of the Borrowers, the Parent, and the Prepetition First Lien Secured Agent, each Borrower and the Parent granted to the Prepetition First Lien Secured Agent, for the benefit of itself and the Prepetition First Lien Secured Lenders, to secure the Prepetition First Lien Obligations, a first priority security interest in and continuing lien (the "Prepetition First Liens") on substantially all of such Borrower's and the Parent's assets and properties (which, for the avoidance of doubt, includes Cash Collateral) and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising.[5] All "Collateral" as defined in the Prepetition First Lien Secured Credit Agreement granted or pledged by such Borrowers and the Parent pursuant to any Prepetition First Lien Collateral Document or any other Prepetition First Lien Loan Document shall collectively be referred to herein as the "Prepetition First Lien Collateral." As of the Petition Date, (I) the Prepetition First Liens (a) are valid, binding, enforceable, and perfected liens, (b) were granted to, or for the benefit of, the Prepetition First Lien Secured Parties for fair consideration and reasonably equivalent value, (c) are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except for the priming contemplated herein), and (d) are subject and subordinate only to (A) the DIP Liens (as defined below), (B) the Carve-Out (as defined below), and (C) the Prepetition Prior Liens (as defined below), and (II) (w) the Prepetition First Lien Obligations constitute legal, valid, and binding obligations of the applicable Debtors, enforceable in accordance with the terms of the applicable Prepetition First

---

[5] As of the Petition Date, the Debtors were unable to complete their confirmatory diligence with respect to whether certain of the Debtors' leased premises were subject to leasehold mortgages in favor of the Prepetition First Lien Secured Agent. Accordingly, except with respect to those leasehold interests listed on Exhibit C hereto (which leasehold interests are subject to the Prepetition First Liens), the Debtors' rights with respect to whether their leased premises were subject to leasehold mortgages in favor of the Prepetition First Lien Secured Agent as of the Petition Date are preserved during the Challenge Period (as defined below) but shall be subject to Paragraph 7 below. The leased premises that are not listed on Exhibit C shall be referred to herein as the "Unscheduled Leases."

Lien Loan Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), (x) no setoffs, recoupments, offsets, defenses, or counterclaims to any of the Prepetition First Lien Obligations exist, (y) no portion of the Prepetition First Lien Obligations or any payments made to any or all of the Prepetition First Lien Secured Parties are subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (z) the Parent Guaranty shall continue in full force and effect to unconditionally guaranty the Prepetition First Lien Obligations notwithstanding any use of Cash Collateral permitted hereunder or any financing and financial accommodations extended by the DIP Secured Parties to the Debtors pursuant to the terms of this Interim Order or the DIP Loan Documents.

(iii) <u>Amounts Owed under Prepetition First Lien Loan Documents</u>. As of the Petition Date, the applicable Debtors owed the Prepetition First Lien Secured Parties, pursuant to the Prepetition First Lien Loan Documents, without defense, counterclaim, or offset of any kind, in respect of loans made and letters of credit issued by the Prepetition First Lien Secured Parties, an aggregate principal amount of not less than $19,949,073 with respect to the Letter of Credit Facility (as defined in the Prepetition First Lien Secured Credit Agreement) and not less than $17,500,000 with respect to the Revolving Credit Loan Facility (as defined in the Prepetition First Lien Secured Credit Agreement), *plus* all accrued and hereafter accruing and unpaid interest thereon and any additional fees, expenses (including any reasonable attorneys', accountants', appraisers', and financial advisors' fees and expenses that are chargeable or reimbursable under the Prepetition First Lien Loan Documents), and other amounts now or hereafter due under the Prepetition First Lien Secured Credit Agreement and the other Prepetition First Lien Loan

Documents.

(iv)    Release of Claims.  Subject to the reservation of rights set forth in Paragraph 7 below, each Debtor and its estate shall be deemed to have forever waived, discharged, and released each of the Prepetition First Lien Secured Parties and their respective members, managers, equity holders, affiliates, agents, attorneys, financial advisors, consultants, officers, directors, and employees (all of the foregoing, collectively, the "Prepetition First Lien Secured Party Releasees") of any and all "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action (including, without limitation, causes of action in the nature of "lender liability"), defenses, setoff, recoupment, or other offset rights against any and all of the Prepetition First Lien Secured Party Releasees, whether arising at law or in equity, relating to and/or otherwise in connection with the Prepetition First Lien Obligations, the Prepetition First Liens, or the debtor-creditor relationship between any of the Prepetition First Lien Secured Parties, on the one hand, and any of the Borrowers or the Parent, on the other hand, including, without limitation, (I) any recharacterization, subordination, avoidance, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state law, federal law, or municipal law and (II) any right or basis to challenge or object to the amount, validity, or enforceability of the Prepetition First Lien Obligations or any payments made on account of the Prepetition First Lien Obligations, or the validity, enforceability, priority, or non-avoidability of the Prepetition First Liens securing the Prepetition First Lien Obligations.

(v)    Intercreditor Agreement.  The Prepetition First Lien Secured Agent and the Prepetition Second Lien Trustee (as defined below) are parties to that certain Intercreditor Agreement, dated as of July 7, 2009 (as amended, restated, supplemented, or

11

otherwise modified in accordance with its terms, the "Intercreditor Agreement"), which sets forth subordination and other provisions governing the relative priorities and rights of the Prepetition First Lien Obligations and the Prepetition First Liens, on the one hand, and the Prepetition Second Lien Obligations (as defined below) and the Prepetition Second Liens, on the other hand. The Debtors admit, stipulate, and agree that the Intercreditor Agreement was entered into in good faith and is fair and reasonable to the parties thereto and enforceable in accordance with the terms thereof.

> E.    **Debtors' Stipulations Regarding the Second Lien Secured Notes.** Without prejudice to the rights of parties in interest to the extent set forth in Paragraph 7 below, the Debtors further admit, stipulate, acknowledge, and agree as follows:

> > (i)    Prepetition Second Lien Secured Notes.    The Debtors and U.S. Bank, National Association, as successor trustee and collateral agent (together with any successor or assign, the "Prepetition Second Lien Trustee"), entered into that certain Indenture, dated as of July 7, 2009 (as amended, restated, supplemented, or otherwise modified prior to the Petition Date, the "Prepetition Second Lien Indenture" and, together with the Note Documents (as defined in the Prepetition Second Lien Indenture), the "Prepetition Second Lien Loan Documents" and, together with the Prepetition First Lien Loan Documents, collectively the "Prepetition Secured Loan Documents"), pursuant to which Real Mex (in such capacity, the "Prepetition Second Lien Borrower") issued to certain holders (collectively, the "Prepetition Second Lien Secured Noteholders" and, together with the Prepetition Second Lien Trustee, the "Prepetition Second Lien Secured Parties" and, together with the Prepetition First Lien Secured Parties, the "Prepetition Secured Parties") 14% second lien senior secured notes (the "Prepetition Second Lien Secured Notes") in an aggregate original principal amount of $130 million maturing

on January 1, 2013 (guaranteed by the Parent, ARI, ETFI, ETRI, TARV, ARV, ARW, AMC, MP, ALAD, RMF, ARD, AMV, EPC, CKR, and Chevy's (collectively the "Prepetition Second Lien Guarantors"). All obligations of the Debtors arising under the Prepetition Second Lien Loan Documents shall collectively be referred to herein as the "Prepetition Second Lien Obligations" and, together with the Prepetition First Lien Obligations, the "Prepetition Secured Obligations."

(ii)      Prepetition Second Liens. The Prepetition Second Lien Obligations are secured by Liens granted to the Prepetition Second Lien Trustee, for the benefit of the Prepetition Second Lien Secured Parties (the "Prepetition Second Lien Liens" and, together with the Prepetition First Liens, the "Prepetition Liens"), on substantially all of the Debtors' assets and properties (which, for the avoidance of doubt, includes Cash Collateral) as set forth in the Prepetition Second Lien Loan Documents, whether then owned or existing or thereafter acquired or arising. All "Collateral" as defined in the Prepetition Second Lien Indenture granted or pledged by the Debtors pursuant to any Prepetition Second Lien Loan Documents shall collectively be referred to herein as the "Prepetition Second Lien Collateral" and, together with the Prepetition First Lien Collateral, collectively, the "Prepetition Collateral."[6] As of the Petition Date, (I) the Prepetition Second Liens (a) are valid, binding, enforceable, and perfected liens, (b) were granted to, or for the benefit of, the Prepetition Second Lien Secured Parties for fair consideration and reasonably equivalent value, (c) are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except for the priming contemplated herein and as otherwise permitted under the Intercreditor Agreement), and (d) are subject and subordinate only to (A) the DIP Liens (as

---

[6] All references to the Prepetition Second Lien Collateral shall be deemed to exclude the Debtors' leaseholds and owned real property.

defined below), (B) the Carve-Out (as defined below), (C) the First Lien Adequate Protection Replacement Liens (as defined below), (D) the Prepetition First Liens, and (E) the Prepetition Prior Liens, and (II) (x) the Prepetition Second Lien Obligations constitute legal, valid, and binding obligations of the applicable Debtors, enforceable in accordance with the terms of the applicable Prepetition Second Lien Loan Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), (y) no setoffs, recoupments, offsets, defenses, or counterclaims to any of the Prepetition Second Lien Obligations exist, and (z) no portion of the Prepetition Second Lien Obligations or any payments made to any or all of the Prepetition Second Lien Secured Parties are subject to avoidance, recharacterization, recovery, subordination, attack, recoupment, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law, except for the priming contemplated herein and as otherwise permitted by the Intercreditor Agreement.

(iii)    <u>Amounts Owed under Prepetition Second Lien Loan Documents</u>. As of the Petition Date, the applicable Debtors owed the Prepetition Second Lien Secured Parties, pursuant to the Prepetition Second Lien Loan Documents, without defense, counterclaim, or offset of any kind, an aggregate principal amount of not less than $130,000,000, *plus* all prepetition accrued or, subject to section 506(b) of the Bankruptcy Code, postpetition accruing and unpaid interest thereon and any additional reasonable fees and expenses (including any reasonable attorneys', accountants', appraisers', and financial advisors' fees and expenses that are chargeable or reimbursable under the Prepetition Second Lien Loan Documents), and other amounts now or hereafter due under the Prepetition Second Lien Loan Documents.

(iv)    <u>Release of Claims</u>. Subject to the reservation of rights set forth in

Paragraph 7 below, each Debtor and its estate shall be deemed to have forever waived, discharged, and released each of the Prepetition Second Lien Secured Parties and their respective affiliates, members, managers, equity security holders, agents, attorneys, financial advisors, consultants, officers, directors, and employees (all of the foregoing, collectively, the "Prepetition Second Lien Secured Party Releasees") of any and all "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action (including causes of action in the nature of "lender liability" causes of action), defenses, setoff, recoupment, or other offset rights against any and all of the Prepetition Second Lien Secured Party Releasees, whether arising at law or in equity, relating to and/or otherwise in connection with the Prepetition Second Lien Obligations and the Prepetition Second Liens, or the debtor creditor relationship between the Prepetition Second Lien Secured Parties, on the one hand, and the Prepetition Second Lien Borrower and the Prepetition Second Lien Guarantors, on the other hand, including, without limitation, (I) any recharacterization, subordination, avoidance, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state law, federal law, or municipal law and (II) any right or basis to challenge or object to the amount, validity, or enforceability of the Prepetition Second Lien Obligations or any payments made on account of the Prepetition Second Lien Obligations, or the validity, enforceability, priority, or non-avoidability of the Prepetition Second Liens securing the Prepetition Second Lien Obligations.

F.     **Findings Regarding the DIP Facility**.

(i)     Need for Postpetition Financing.  The Debtors have an immediate need to obtain the DIP Facility and use Cash Collateral to, among other things, permit the orderly continuation of the operation of their businesses, to maintain business relationships with vendors,

suppliers, and customers, to make payroll, to make capital expenditures, to satisfy other working capital and operation needs, to complete the Debtors' marketing and sale process and to otherwise preserve the enterprise value of the Debtors' estates. The Debtors' access to sufficient working capital and liquidity through the use of Cash Collateral and borrowing under the DIP Facility is vital to a successful sale and/or to otherwise preserve the enterprise value of the Debtors' estates. Immediate and irreparable harm will be caused to the Debtors and their estates if immediate financing is not obtained and permission to use Cash Collateral is not granted, in each case in accordance with the terms of this Interim Order and the DIP Loan Documents.

(ii)     No Credit Available on More Favorable Terms. As set forth in the DIP Motion and in the Bilbao Declaration in support thereof, the Debtors have determined, at the time hereof, that no acceptable financing on more favorable terms from sources other than the DIP Secured Parties under the DIP Loan Documents and this Interim Order is available. The Debtors are unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors are also unable to obtain secured credit on terms acceptable to the Debtors allowable only under sections 364(c)(1), 364(c)(2), or 364(c)(3) of the Bankruptcy Code. The Debtors are unable to obtain secured credit under section 364(d)(1) of the Bankruptcy Code without (a) granting to the DIP Secured Parties the rights, remedies, privileges, benefits, and protections provided herein and in the DIP Loan Documents, including, without limitation, the DIP Liens and the DIP Superpriority Claims (each as defined below), (b) allowing the DIP Secured Parties to provide the loans, letters of credit, and other financial accommodations under the DIP Facility on the terms set forth herein and in the DIP Loan Documents (all of the foregoing described in clauses (a) and (b) above, including, without limitation, the DIP Liens and the DIP Superpriority Claims, collectively, the "DIP Protections"),

16

and (c) providing the Prepetition Secured Parties the adequate protection more fully described in Paragraphs 4 and 5 below.

G. **Interim Financing**. During the Interim Period, the DIP Agent, the other DIP Secured Parties, and, as applicable, the Prepetition Secured Parties, are willing to provide financing to the Debtors and/or consent to the use of Cash Collateral by the Debtors, as applicable, subject to (i) the entry of this Interim Order, (ii) the terms and conditions of the DIP Loan Documents, and (iii) findings by the Court that such interim postpetition financing and use of Cash Collateral is essential to the Debtors' estates, that the terms of such interim financing and use of Cash Collateral were negotiated in good faith and at arm's length, and that the DIP Liens, the DIP Superpriority Claims, and the other protections granted pursuant to this Interim Order and the DIP Loan Documents with respect to such interim financing and use of Cash Collateral will not be affected by any subsequent reversal, modification, vacatur, or amendment of this Interim Order or any other order, as provided in section 364(e) of the Bankruptcy Code or this Interim Order. Without limiting the foregoing, any advances made to the Debtors and Cash Collateral use by the Debtors under the DIP Loan Documents and this Interim Order during the Interim Period shall be entitled to the protections provided by section 364(e) of the Bankruptcy Code. The DIP Agent, the other DIP Secured Parties and the respective Prepetition Secured Parties have each acted in good faith in, as applicable, negotiating, consenting to, and agreeing to provide the postpetition financing arrangements and/or use of Cash Collateral on an interim basis as contemplated by this Interim Order and the DIP Loan Documents, and the reliance by the DIP Agent, the other DIP Secured Parties and the respective Prepetition Secured Parties on the assurances referred to above is in good faith.

H. **Adequate Protection for Prepetition Secured Parties**. The Prepetition

First Lien Secured Agent, the Prepetition Second Lien Trustee, and the Majority Prepetition Second Lien Secured Noteholders have negotiated in good faith regarding the Debtors' use of the Prepetition Collateral (including the Cash Collateral) to fund the administration of the Debtors' estates and continued operation of their businesses. The Prepetition First Lien Secured Agent, Prepetition Second Lien Trustee, and the Majority Prepetition Second Lien Secured Noteholders have agreed to permit the Debtors to use the Prepetition Collateral, including the Cash Collateral, during the Interim Period, subject to the terms and conditions set forth herein, including the protections afforded a party acting in "good faith" under section 364(e) of the Bankruptcy Code. In addition, the DIP Facility contemplated hereby provides for a priming of the Prepetition Liens pursuant to section 364(d) of the Bankruptcy Code. The Prepetition Secured Parties are entitled to the adequate protection as set forth herein, including, with respect to the First Lien Secured Parties, the Prepetition First Lien Roll-Up (as defined below), pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code. Based on the DIP Motion and on the record presented to the Court at the Interim Hearing, the terms of the proposed adequate protection arrangements, use of the Cash Collateral, and the DIP Facility contemplated hereby are fair and reasonable, reflect the Debtors' prudent exercise of business judgment, and constitute reasonably equivalent value and fair consideration for the consent of the respective Prepetition Secured Parties.

      I.      **Section 552**. In light of the subordination of their Liens and superpriority administrative claims to (i) the Carve-Out (as defined below) in the case of the DIP Secured Parties, (ii) the Carve-Out and the DIP Liens in the case of the Prepetition First Lien Secured Parties, and (iii) the Carve-Out, the DIP Liens, the First Lien Adequate Protection Replacement Liens (as defined below), and the Prepetition First Liens in the case of the Prepetition Second Lien Secured Parties, each of the DIP Secured Parties, the Prepetition First Lien Secured Parties,

and the Prepetition Second Lien Secured Parties is entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and, subject to the entry of the Final Order, the "equities of the case" exception shall not apply.

J. **Business Judgment and Good Faith Pursuant to Section 364(e)**.

(i)     The DIP Secured Parties have indicated a willingness to provide postpetition secured financing via the DIP Facility to the Debtors in accordance with the DIP Loan Documents and this Interim Order.

(ii)     The terms and conditions of the DIP Facility as set forth in the DIP Loan Documents and this Interim Order, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available under the circumstances, and the Debtors' agreement to the terms and conditions of the DIP Loan Documents and to the payment of such fees reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties. Such terms and conditions are supported by reasonably equivalent value and fair consideration.

(iii)     The DIP Facility and the DIP Loan Documents were negotiated in good faith and at arm's length among the Debtors and the DIP Secured Parties with the assistance and counsel of their respective advisors, and all of the DIP Obligations shall be deemed to have been extended by the DIP Secured Parties and their affiliates for valid business purposes and uses and in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code or this Interim Order, and the DIP Liens, the DIP Superpriority Claims (as defined below) and the other DIP Protections shall be entitled to the full protection of section 364(e) of the Bankruptcy Code and this Interim Order in the event this Interim Order or any other order or any provision hereof or thereof is vacated, reversed, amended, or modified, on appeal or otherwise.

K.  **Relief Essential; Best Interest**.  For the reasons stated above, the Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2), 4001(c)(2), and the Local Rules.  Absent granting the relief set forth in this Interim Order, the Debtors' estates and their ability to successfully sell their assets or otherwise preserve the enterprise value of the Debtors' estates will be immediately and irreparably harmed. Consummation of the DIP Facility and authorization of the use of Cash Collateral in accordance with this Interim Order and the DIP Loan Documents is therefore in the best interests of the Debtors' estates and consistent with their fiduciary duties.

**NOW, THEREFORE**, on the DIP Motion and the record before this Court with respect to the DIP Motion, and with the consent of the Debtors, the Prepetition First Lien Secured Agent (on behalf of the Prepetition First Lien Secured Parties), the Prepetition Second Lien Trustee (on behalf of the Prepetition Second Lien Secured Parties) and the DIP Agent (on behalf of the DIP Secured Parties) to the form and entry of this Interim Order, and good and sufficient cause appearing therefor,

**IT IS ORDERED** that:

1.  **Motion Granted**.  The DIP Motion is hereby granted in accordance with the terms and conditions set forth in this Interim Order and the DIP Loan Documents.  Any objections to the DIP Motion with respect to the entry of this Interim Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby denied and overruled.

2.  **DIP Loan Documents and DIP Protections**.

(a)  <u>Approval of DIP Loan Documents</u>.  The Debtors are expressly and immediately authorized to establish the DIP Facility, to execute, deliver, and perform under the

DIP Loan Documents and this Interim Order, to incur the DIP Obligations (as defined below) in accordance with, and subject to, the terms of this Interim Order and the DIP Loan Documents, and to execute, deliver, and perform under all other instruments, certificates, agreements, and documents which may be required or necessary for the performance by the applicable Debtors under the DIP Loan Documents and the creation and perfection of the DIP Liens described in, and provided for, by this Interim Order and the DIP Loan Documents. The Debtors are hereby authorized and directed to do and perform all acts and pay the principal, interest, fees, expenses, and other amounts described in the DIP Loan Documents as such become due pursuant to the DIP Loan Documents and this Interim Order, including, without limitation, all closing fees, administrative fees, commitment fees, and reasonable attorneys', financial advisors', and accountants' fees, and disbursements arising under the DIP Loan Documents and this Interim Order, which amounts shall not be subject to further approval of this Court and shall be non-refundable. Upon their execution and delivery, the DIP Loan Documents shall represent valid and binding obligations of the applicable Debtors enforceable against such Debtors in accordance with their terms. Each officer of a Debtor acting singly is hereby authorized to execute and deliver each of the DIP Loan Documents, such execution and delivery to be conclusive of such officer's respective authority to act in the name of and on behalf of the Debtors.

(b)     DIP Obligations. For purposes of this Interim Order, the term "DIP Obligations" shall mean all amounts and other obligations and liabilities owing by the Debtors under the DIP Credit Agreement and other DIP Loan Documents (including, without limitation, all "Obligations" as defined in the DIP Credit Agreement) and shall include, without limitation, the principal of, interest on, fees, costs, expenses, and other charges owing in respect of, such

amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors', and other fees, costs, and expenses that are chargeable or reimbursable under the DIP Loan Documents and/or this Interim Order), and any obligations in respect of indemnity claims, whether contingent or otherwise. In addition, notwithstanding anything to the contrary herein, from and after the entry of this Interim Order, the DIP Obligations (and the definition of "DIP Obligations" used in this Interim Order) shall include the aggregate amount of all draws made on prepetition Letters of Credit that are funded by the Prepetition First Lien Secured Parties from and after the Petition Date in accordance with the Prepetition First Lien Loan Documents.

(c)     Authorization to Incur DIP Obligations.     To enable the Debtors to continue to operate their business, during the period from the entry of this Interim Order through and including the earliest to occur of (i) the entry of the Final Order, (ii) the Interim Period Outside Date or (iii) the Cash Collateral Termination Date, in each case unless extended by written agreement of the DIP Agent, the Prepetition First Lien Secured Agent and the Majority Prepetition Second Lien Secured Noteholders (the period from the entry of this Interim Order through and including such earliest date, the "Interim Period"), and subject to the terms and conditions of this Interim Order and the DIP Loan Documents, including, without limitation, the Budget Covenants as defined and contained in Paragraph 2(e) below, the DIP Borrowers are hereby authorized to use Cash Collateral and borrow under the DIP Facility in an aggregate outstanding principal amount for all such borrowings and Cash Collateral usage not to exceed $0 under the LC Facility and $5,000,000 under the Revolver Facility (following the entry of the Final Order, the DIP Borrowers' authority to incur further DIP Obligations, if any, and use further Cash Collateral will be governed by the terms of such Final Order). Any amounts repaid under the DIP Facility may be reborrowed, subject to the terms of the DIP Loan Documents and

this Interim Order. All DIP Obligations shall be unconditionally guaranteed, on a joint and several basis, by the Guarantors, as further provided in the DIP Loan Documents. To the extent that relief is approved at the Final Hearing, the Debtors shall, subject to the terms of the DIP Loan Documents and the Final Order, be entitled to borrow all amounts under the DIP Loan Documents to fund the Debtors' working capital and other general corporate needs and pay such other amounts required or allowed to be paid pursuant to the DIP Loan Documents, the Final Order, and any other orders of this Court, including, but not limited to, any amounts then outstanding with respect to the Prepetition First Lien Obligations, which shall be converted to DIP Obligations upon entry of such Final Order.

(d)     Budget.     Attached hereto as <u>Exhibit A</u> is a rolling 13-week cash flow budget (the "<u>Initial Approved Budget</u>") which reflects on a line-item basis the Debtors' (i) weekly projected cash receipts, (ii) weekly projected disbursements and outstanding Letters of Credit (including ordinary course operating expenses, bankruptcy-related expenses under the Cases, capital expenditures, asset sales, issuances of any letter of credit, including the fees relating thereto, and estimated fees and expenses of the DIP Agent (including counsel and financial advisors therefor), the Prepetition First Lien Secured Agent (including counsel and financial advisors therefor), the Prepetition Second Lien Trustee (including counsel therefor), the fees and expenses of Prepetition Second Lien Secured Noteholders representing a majority in aggregate principal amount of the Second Lien Notes (the "<u>Majority Prepetition Second Lien Secured Noteholders</u>") (including counsel and financial advisors therefor), and any other fees and expenses relating to the DIP Facility, (iii) the sum of weekly unused availability under the DIP Facility plus unrestricted cash on hand (collectively, "<u>Aggregate Liquidity</u>"), and (iv) the weekly outstanding principal balance of the loans made under the DIP Facility (including the

principal amount of the Prepetition First Lien Roll-Up from and after the entry of a Final Order (labeled as "Revolver Borrowed Balance" in the Approved Budget (as defined below))). Commencing on October 21, 2011 and continuing every second Friday thereafter (i.e., every two weeks), the Debtors shall prepare and deliver simultaneously to the DIP Agent, the Prepetition First Lien Secured Agent, the Prepetition Second Lien Trustee, and the Majority Prepetition Second Lien Secured Noteholders: (i) an updated "rolling" 13-week budget, which, once approved in writing by each of the DIP Agent, the Prepetition First Lien Secured Agent and the Majority Prepetition Second Lien Secured Noteholders in their respective sole discretion, shall supplement and replace the Approved Budget or Supplemental Approved Budget, as applicable, then in effect (each such updated budget that has been approved in writing by each of the DIP Agent, the Prepetition First Lien Secured Agent and the Majority Prepetition Second Lien Secured Noteholders, a "Supplemental Approved Budget") without further notice, motion, or application to, order of, or hearing before, this Court; provided, however, that the DIP Agent, the Prepetition First Lien Secured Agent and the Majority Prepetition Second Lien Secured Noteholders shall each have one week to approve each updated "rolling budget" (any such party that fails to timely provide the Debtors and each of the other aforementioned parties written notice of any objection to such updated "rolling budget" shall be deemed to have approved such updated "rolling budget"); provided, further, however, that unless and until each of the DIP Agent, the Prepetition First Lien Secured Agent and the Majority Prepetition Second Lien Secured Noteholders have approved (or be deemed to have approved as provided above) such updated budget, the Debtors shall still be subject to and be governed by the terms of the Initial Approved Budget or Supplemental Approved Budget, as applicable, then in effect, and the DIP Agent, the other DIP Secured Parties, and the Prepetition Secured Parties shall, as applicable,

have no obligation to fund to such updated "rolling budget" or permit the use of Cash Collateral with respect thereto, as applicable; and (ii) a variance report/reconciliation report certified by the Chief Financial Officer or Vice President of Finance of the Debtors, in form acceptable to the DIP Agent, the Prepetition First Lien Secured Agent and the Majority Prepetition Second Lien Secured Noteholders, setting forth (A) the actual cash receipts, expenditures, disbursements, and outstanding revolving loan balance (separating out the amount of the Prepetition First Lien Roll-Up during the Interim Period) of the Debtors for such immediately preceding four week period on a line-item basis and the Aggregate Liquidity as of the end of such four-week period, and (B) the variance in dollar amounts of the actual expenditures, disbursements, and outstanding revolving loan balance for each four-week period from those budgeted amounts for the corresponding period reflected in the Approved Budget. The aggregate, without duplication, of all items in the Initial Approved Budget and any Supplemental Approved Budgets shall constitute the "Approved Budget."

(e)     Budget Covenants. The Debtors shall only incur DIP Obligations and expend Cash Collateral and other DIP Collateral proceeds in accordance with the specific purposes, and at the specific time periods, set forth in the Approved Budget, subject to the following permitted variances, which shall be tested initially on October 21, 2011 (the "First Testing Date") (testing the period from the Petition Date through and including October 14, 2011 (such initial testing period, the "First Testing Period")) and continuing on each second Friday thereafter (each, a "Subsequent Testing Date") (in each case, testing the trailing four week period ending on the Friday before the applicable Subsequent Testing Date (each, a "Four Week Testing Period")): (i) (A) for the First Testing Date, the sum of all actual disbursements of the Debtors (calculated in the same manner as the "Total Operating Disbursements" in the Approved Budget

were calculated) for the First Testing Period shall not exceed 115% of the sum of the "Total Operating Disbursements" for such First Testing Period as set forth in the Approved Budget, and (B) for each Subsequent Testing Date, the sum of all actual operating disbursements of the Debtors (calculated in the same manner as the "Total Operating Disbursements" in the Approved Budget were calculated) for the immediately preceding Four Week Testing Period shall not exceed 110% of the sum of the "Total Operating Disbursements" for such Four Week Testing Period as set forth in the Approved Budget; and (ii) (A) for the First Testing Date, the sum of actual receipts of the Debtors for the First Testing Period shall not be less than 85% of the sum of the "Total Receipts" for such First Testing Period as set forth in the Approved Budget, and (B) for each Subsequent Testing Date, the sum of actual receipts of the Debtors for the immediately preceding Four Week Testing Period shall not be less than 90% of the sum of the "Total Receipts" for such Four Week Testing Period as set forth in the Approved Budget. Notwithstanding the foregoing, in no event shall the actual "Revolver Borrowed Balance" (calculated in the same manner as the budgeted "Revolver Borrowed Balance" set forth in the Approved Budget) as of the close of business on the First Testing Date or any Subsequent Testing Date exceed 115% of the budgeted "Revolver Borrowed Balance" set forth under the last week of the First Testing Period or subsequent Four Week Testing Period, as applicable, in the Approved Budget. Notwithstanding the foregoing, for purposes of testing the "Revolver Borrowed Balance" for any week during the Interim Period (including the permitted variances thereto as set forth above), the "Revolver Borrowed Balance" set forth in the Approved Budget for such week shall be the sum of the budgeted "Revolver Borrowed Balance" for such week plus the "Prepetition Revolver Balance" for such week, in each case as set forth in the Approved

Budget. The foregoing budget-related covenants are collectively referred to herein as the "Budget Covenants."

(f) <u>Termination Events</u>. The occurrence of any of the following events, unless waived in writing by each of the DIP Agent, the Prepetition First Lien Secured Agent, and the Majority Prepetition Second Lien Secured Noteholders, in their sole discretion, shall constitute a termination event under this Interim Order and the DIP Loan Documents (each, a "Termination Event"):

(i)     (a) reversal, vacatur, or modification of this Interim Order without the express prior written consent of the DIP Agent, in its sole discretion, or (b) reversal, vacatur, or modification of any provision of this Interim Order directly and adversely affecting the rights of the Prepetition First Lien Secured Parties or Prepetition Second Lien Secured Parties, as applicable, without the express prior written consent of the Prepetition First Lien Secured Agent in the case of adversely affected Prepetition First Lien Secured Parties, and the Majority Prepetition Second Lien Secured Noteholders in the case of adversely affected Prepetition Second Lien Secured Parties, as applicable, each in their respective sole discretion;

(ii)     dismissal of any of the Cases or conversion of any of the Cases to chapter 7 cases, or appointment of a chapter 11 trustee or examiner or other responsible person in any of the Cases;

(iii)     the occurrence of any Event of Default (as defined in the DIP Credit Agreement), or the occurrence of any Default following the passage of any applicable notice or cure period set forth in the DIP Credit Agreement regardless of any acts or omissions of the DIP Secured Parties that would otherwise have resulted in such Default not becoming an Event of Default by virtue of such passage of any applicable notice or cure period (the "DIP Default Termination Event");

(iv)     the failure by the Debtors to timely perform, in any respect, any of the terms, provisions, conditions, covenants, or other obligations under this Interim Order;

(v)     the failure of the Debtors to timely comply with any of the following sale process milestones (collectively, the "Sale Process Deadlines") or the failure of the Debtors to incorporate such milestones into a bid procedures motion and order, each of which shall be in form and substance acceptable to the DIP Agent, the Prepetition First Lien Secured Agent, and the Majority Prepetition Second Lien Secured Noteholders (the "Bid Procedures Motion" and "Bid Procedures

27

Order," respectively):

a) on the Petition Date, file the Bid Procedures Motion and proposed form of Bid Procedures Order;

b) hearing on the Bid Procedures Motion on or prior to November 3, 2011 (with the form asset purchase agreement to be filed not less than five days prior to such hearing);

c) entry of the Bid Procedures Order on or prior to November 8, 2011;

d) on or prior to 4:00 p.m. (Pacific Time) on January 4, 2012, all qualified bids (which bids, among other things, shall not contain any financing or diligence conditions) shall be due (which bid deadline shall not be extended without the consent of each of the DIP Agent, the Prepetition First Lien Secured Agent, and the Majority Prepetition Second Lien Secured Noteholders, except as otherwise provided below) (the "Qualified Bid Deadline");

e) the auction shall, if necessary, be conducted on or prior to January 9, 2012 at 10:00 a.m. (Pacific Time);

f) hearing to approve the sale to the winning bidder on or prior to January 13, 2012 at 2:00 p.m. (Eastern Time) (it being understood that (I) the proceeds of such sale shall be used Pay in Full all Prepetition First Lien Obligations and DIP Obligations promptly upon the closing thereof or such sale shall otherwise be on terms, and pursuant to definitive documentation, acceptable to the DIP Agent and the Prepetition First Lien Secured Agent), and (II) after the Prepetition First Lien Obligations and DIP Obligations have been Paid in Full (as defined below), the proceeds of such sale allocable to the Prepetition Second Lien Collateral shall be used to repay in cash all Prepetition Second Lien Obligations, provided, however, that repayment in cash of the Prepetition Second Lien Obligations shall be subject to the ordinary course administrative fees and expenses of the estates (pending resolution of the allocation determination) and a carve-out, in amounts for such administrative fees and expenses and additional carve-out to be agreed upon by the Debtors and the Majority Prepetition Second Lien Secured Noteholders or so ordered by this Court, to be used for the wind-down of the Cases; provided further, however, that the Majority Prepetition Second Lien Secured Noteholders hereby reserve all of their rights to assert that value allocated to unencumbered assets, as opposed to value allocated to the Prepetition Second Lien Collateral, shall be used first to pay the administrative expenses of the estates, and the Debtors and the

28

Committee hereby reserve all of their rights to oppose such assertion);

g)    on or prior to February 13, 2012, such sale shall have been consummated.

Notwithstanding the foregoing, provided that no Termination Event has occurred and is continuing, the Debtors shall have the right to extend, for not more than two weeks, the Qualified Bid Deadline if the Debtors determine in their reasonable business judgment that doing so could reasonably be expected to result in a higher purchase price; provided, that if the Qualified Bid Deadline is so extended, each subsequent deadline set forth above shall also be increased by the same number of days as the extension of the Qualified Bid Deadline.

(vi)    the failure of the Debtors to (a) on or prior to the earlier of (I) fifty (50) days following the Petition Date, and (II) the first date on which the Debtors move the Bankruptcy Court to assume or reject any other unexpired lease and/or executory contract, file a motion in form and substance acceptable to the DIP Agent seeking Bankruptcy Court approval, pursuant to an order in form and substance acceptable to the DIP Agent (the "Lease Assumption Order"), to assume all unexpired leases between the Debtors and the affiliates of the DIP Agent on the previously agreed terms set forth in schedule 4 to the DIP Credit Agreement (collectively, the "DIP Agent Affiliate Leases"); provided, however, that assignment of such DIP Agent Affiliate Leases during the Cases shall be subject to section 365 of the Bankruptcy Code notwithstanding any provision of such DIP Agent Affiliate Lease that would otherwise be enforceable had such DIP Agent Affiliate Lease not been assumed; and (b) on or prior to December 9, 2011, obtain the Lease Assumption Order. Notwithstanding the foregoing, the Majority Prepetition Second Lien Secured Noteholders reserve all of their rights to object to entry of the Lease Assumption Order.

(vii)    the failure of the Debtors to timely perform their obligations under any DIP Agent Affiliate Lease (including payment of rent and other charges as and when due under such leases) notwithstanding any provision of the Bankruptcy Code to the contrary.

(viii)    the filing of any motion seeking to reject any DIP Agent Affiliate Lease or seeking to assume any such DIP Agent Affiliate Lease on terms other than those agreed to by the parties and described in schedule 4 to the DIP Credit Agreement.

(g)    Interest, Fees, Costs and Expenses. The DIP Obligations shall bear interest at the rates, and be due and payable (and paid), as set forth in, and in accordance with the terms and conditions of, this Interim Order and the DIP Loan Documents, in each case without

29

further notice, motion, or application to, order of, or hearing before, this Court. The Debtors shall pay on demand all fees, costs, expenses (including reasonable out-of-pocket legal and other professional fees and expenses of the DIP Agent) and other charges payable under the terms of the DIP Loan Documents, including, without limitation, the fees described in (i) that certain Fee Letter, dated as of October 3, 2011, by and between the DIP Borrowers, on the one hand, the DIP Agent and an affiliate, on the other hand; and (ii) that certain Fee Letter, dated as of October 3, 2011, by and between the DIP Borrowers and Sun Cantinas Finance, LLC (collectively, the "Fee Letters"), which fees were disclosed to the Court and the United States Trustee in camera or under seal, as applicable, at the hearing on this Interim Order. All fees described in the respective Fee Letters are fully earned, all paid portions of such fees are finally allowed and non-refundable, all unpaid portions of such fees shall be immediately payable by the Debtors upon entry of this Interim Order (except as otherwise provided in the Fee Letters), and the payment of such fees, costs, and expenses shall not be subject to Challenge pursuant to Paragraph 7 hereof or otherwise.

(h)    Use of DIP Facility and Proceeds of DIP Collateral. The DIP Borrowers shall apply the proceeds of all DIP Collateral (as defined below) solely in accordance with this Interim Order and the applicable provisions of the DIP Loan Documents. Without limiting the foregoing, the Debtors shall not be permitted to make any payments on account of any prepetition debt or obligation prior to the effective date of a chapter 11 plan or plans with respect to any of the Debtors, except with respect to (a) the Prepetition Secured Obligations as set forth in this Interim Order and a Final Order; (b) as provided in the First Day Orders, which First Day Orders shall be in form and substance acceptable to the DIP Agent; (c) as provided in other motions, orders, and requests for relief, each in form and substance acceptable to the DIP Agent

prior to such motion, order, or request for such relief being filed; or (d) as otherwise provided in the DIP Credit Agreement.

(i)    <u>Conditions Precedent</u>. The DIP Secured Parties and Prepetition First Lien Secured Parties each have no obligation to extend credit under the DIP Facility or permit use of any DIP Collateral proceeds, including Cash Collateral, as applicable, during the Interim Period unless and until all conditions precedent to the extension of credit and/or use of DIP Collateral or proceeds thereof under the DIP Loan Documents and this Interim Order have been satisfied in full or waived by the requisite DIP Secured Parties and the Prepetition First Lien Secured Agent in accordance with the DIP Loan Documents and this Interim Order.

(j)    <u>DIP Liens</u>. As security for the DIP Obligations, the following security interests and liens, which shall immediately and without any further action by any Person, be valid, binding, permanent, perfected, continuing, enforceable, and non-avoidable upon the entry of this Interim Order, are hereby granted by the Debtors to the DIP Agent, for its own benefit and the ratable benefit of the DIP Secured Parties, on all property of the Debtors, now existing or hereinafter acquired, including, without limitation, all cash and cash equivalents (whether maintained with the DIP Agent or otherwise), and any investment in such cash or cash equivalents, money, inventory, goods, accounts receivable, other rights to payment, intercompany loans and other investments, investment property, contracts, contract rights, properties, plants, equipment, machinery, general intangibles, payment intangibles, accounts, deposit accounts, documents, instruments, chattel paper, documents of title, letters of credit, letter of credit rights, supporting obligations, leases and other interests in leaseholds, real property, fixtures, patents, copyrights, trademarks, trade names, other intellectual property, intellectual property licenses, capital stock of subsidiaries, tax and other refunds, insurance

proceeds, commercial tort claims, Postpetition Transfer Avoidance Actions (as defined below) and proceeds relating thereto, rights under section 506(c) of the Bankruptcy Code (solely upon entry of the Final Order), all other Collateral (as defined in the DIP Loan Documents), and all other "property of the estate" (as defined in section 541 of the Bankruptcy Code) of any kind or nature, real or personal, tangible, intangible, or mixed, now existing or hereafter acquired or created, and all rents, products, substitutions, accessions, profits, replacements, and cash and non-cash proceeds of all of the foregoing, excluding only Avoidance Actions other than Postpetition Transaction Avoidance Actions as provided below (all of the foregoing collateral collectively referred to as the "DIP Collateral," and all such Liens granted to the DIP Agent for the benefit of all the DIP Secured Parties pursuant to this Interim Order and the DIP Loan Documents, the "DIP Liens"):

> (I)  pursuant to section 364(c)(2) of the Bankruptcy Code, a perfected, binding, continuing, enforceable, and non-avoidable first priority Lien on all unencumbered DIP Collateral and the Debtors' claims and causes of action under section 549 of the Bankruptcy Code relating to postpetition transfers and the proceeds relating thereto (the "Postpetition Transfer Avoidance Actions"), which, for the avoidance of doubt, shall not include the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 550 and 553 of the Bankruptcy Code and any other avoidance or similar action under the Bankruptcy Code or similar state law and the proceeds thereof ("Avoidance Actions"), whether received by judgment, settlement, or otherwise;

> (II)  pursuant to section 364(c)(3) of the Bankruptcy Code, a perfected, binding, continuing, enforceable, and non-avoidable junior Lien upon all DIP Collateral that is subject solely to the Prepetition Prior Liens, other than liens which are expressly stated to be primed by the liens to be granted to the DIP Agent described in clause (III) below; and

> (III)  pursuant to section 364(d)(1) of the Bankruptcy Code, a perfected first priority, senior priming lien on all DIP Collateral (including, without limitation, Cash Collateral) that is senior to the Adequate Protection Replacement Liens (as defined below) and senior and priming to (x) the Prepetition Liens and (y) any Liens that are junior to the Prepetition Liens and the Adequate Protection Replacement Liens, after giving effect to any intercreditor or subordination agreements (the liens referenced in clauses (x) and (y), collectively, the "Primed

Liens"); provided, however, that the liens described in this subsection (III) shall be junior solely to the Carve-Out and the Prepetition Prior Liens.

(k)  DIP Lien Priority.  Notwithstanding anything to the contrary contained in this Interim Order or the DIP Loan Documents, for the avoidance of doubt, the DIP Liens granted to the DIP Agent for the ratable benefit of the DIP Secured Parties shall in each and every case be first priority senior liens that (i) are subject only to the Prepetition Prior Liens, and to the extent provided in the provisions of this Interim Order and the DIP Loan Documents, shall also be subject to the Carve-Out, and (ii) except as provided in sub-clause (i) of this clause (k), are senior to all prepetition and postpetition liens of any other person or entity (including, without limitation, the Primed Liens and the Adequate Protection Replacement Liens).  The DIP Liens and the DIP Superpriority Claims (as defined below) (A) shall not be subject to sections 506, 510, 549, 550, or 551 of the Bankruptcy Code or the "equities of the case" exception of section 552 of the Bankruptcy Code, (B) shall not be subordinate to, or *pari passu* with, (x) any lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (y) any intercompany or affiliate liens of the Debtors, and (C) shall be valid and enforceable against any trustee or any other estate representative appointed in the Cases, upon the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (each, a "Successor Case"), and/or upon the dismissal of any of the Cases.  Without limiting the foregoing, the DIP Obligations shall also be secured by the Prepetition First Liens, which shall remain in full force and effect and continue from and after the Petition Date to secure both the DIP Obligations and the Prepetition First Lien Obligations (with the DIP Obligations having priority in accordance with the terms of this Interim Order).  The definition of "DIP Liens" shall include the Prepetition First Liens solely to the extent that they secure the DIP Obligations as provided herein.

33

(l)     <u>Enforceable Obligations</u>.  The DIP Loan Documents shall constitute and evidence the valid and binding DIP Obligations of the Debtors, which DIP Obligations shall be enforceable against the Debtors, their estates and any successors thereto (including, without limitation, any trustee or other estate representative in any Successor Case), and their creditors, in accordance with their terms.  No obligation, payment, transfer, or grant of security under the DIP Credit Agreement, the other DIP Loan Documents, or this Interim Order shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, 547, 548, or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

(m)     <u>Superpriority Administrative Claim Status</u>.  In addition to the DIP Liens granted herein, effective immediately upon entry of this Interim Order, all of the DIP Obligations shall constitute allowed superpriority administrative claims pursuant to section 364(c)(1) of the Bankruptcy Code, which shall have priority, subject only to the payment of the Carve-Out, over all administrative expense claims, adequate protection and other diminution claims (including the Adequate Protection Superpriority Claims (as defined below)), unsecured claims, and all other claims against the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses or other claims of the kinds specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546, 726, 1113, and 1114 or any other provision of the Bankruptcy Code, whether or not such

expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment (the "DIP Superpriority Claims"). The DIP Superpriority Claims shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, shall be against each Debtor on a joint and several basis, and shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof. Other than as provided in the DIP Credit Agreement and this Interim Order with respect to the Carve-Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in these proceedings, or in any Successor Cases, and no priority claims are, or will be, senior to, prior to, or on a parity with the DIP Superpriority Claims or the DIP Obligations, or with any other claims of the DIP Secured Parties arising hereunder.

3.    **Authorization to Use Cash Collateral and Proceeds of the DIP Facility**. Subject to the terms and conditions of this Interim Order and the DIP Loan Documents, including without limitation, the Budget Covenants set forth in Paragraph 2(e), (a) the Debtors are authorized to use proceeds of credit extended under the DIP Facility from and after the Closing Date, and (b) the Debtors are authorized to use Cash Collateral; provided, however, that each Debtor shall be prohibited from at any time using proceeds of DIP Collateral (including Cash Collateral) or advances under the DIP Facility, in each case, except in accordance with the terms and conditions of this Interim Order and the DIP Loan Documents. To fund the Debtors' working capital and other general corporate needs pending the Final Hearing, in accordance with the terms of this Interim Order, the DIP Loan Documents, and the Approved Budget, the Debtors may request advances and other financial accommodations under the DIP Facility. Upon entry

of a Final Order, all Prepetition First Lien Obligations shall be deemed automatically converted to DIP Obligations and incurred under the DIP Facility pursuant to Paragraph 4(i) hereof, and thereafter, the Debtors shall continue to use the DIP Facility and Cash Collateral to fund the Debtors' working capital and other general corporate needs in accordance with the terms of the Final Order and the DIP Loan Documents. The DIP Agent and the other DIP Secured Parties may terminate the applicable Debtors' right to use proceeds of extensions of credit under the DIP Facility, DIP Collateral, Prepetition Collateral, and Cash Collateral without further notice, motion, or application to, order of, or hearing before, the Court, in accordance with Paragraph 15 below, immediately upon notice to such effect by the DIP Agent to the Debtors after the occurrence and during the continuance of any Termination Event. Upon the occurrence and during the continuance of a Termination Event (subject to Paragraph 15 below), any of the Prepetition First Lien Secured Agent (on behalf of the Prepetition First Lien Secured Parties) and/or the Majority Prepetition Second Lien Secured Noteholders (on behalf of the Prepetition Second Lien Secured Parties) may terminate the consensual Cash Collateral use arrangement contained herein without further notice, motion, or application to, order of, or hearing before, the Court; provided, that the rights of the DIP Agent, the Prepetition First Lien Secured Agent, and the Majority Prepetition Second Lien Secured Noteholders under this Interim Order or otherwise shall not be affected by the waiver of any Termination Event by any other party. The earliest date upon which the consensual Cash Collateral use arrangement described in this Interim Order is terminated pursuant to this Paragraph 3 shall be referred to herein as the "Cash Collateral Termination Date."

4. **Adequate Protection for Prepetition First Lien Secured Parties**. In consideration for the use of the Prepetition Collateral (including Cash Collateral) and the priming

of the Prepetition First Liens, the Prepetition First Lien Secured Parties shall receive the following adequate protection (collectively referred to as the "Prepetition First Lien Secured Parties' Adequate Protection"):

(i)     Prepetition First Lien Roll-Up.  Subject to entry of a Final Order, all Prepetition First Lien Obligations shall immediately, automatically, and irrevocably be deemed to have been converted into DIP Obligations and incurred under the DIP Facility (the "Prepetition First Lien Roll-Up").

(ii)     First Lien Adequate Protection Replacement Liens.  To the extent there is a diminution in value of the interests of the Prepetition First Lien Secured Parties in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date resulting from the use, sale, or lease by the Debtors of the applicable Prepetition Collateral (including Cash Collateral), the granting of the DIP Superpriority Claims, the granting of the DIP Liens, the subordination of the Prepetition First Liens thereto and to the Carve-Out, and the imposition or enforcement of the automatic stay of section 362(a) of the Bankruptcy Code ("Diminution in Prepetition First Lien Collateral Value"), the Prepetition First Lien Agent, for the benefit of all the Prepetition First Lien Secured Parties, is hereby granted, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e), and 364 of the Bankruptcy Code, replacement Liens upon all of the DIP Collateral, except Avoidance Actions other than Postpetition Transfer Avoidance Actions (such adequate protection replacement liens, the "First Lien Adequate Protection Replacement Liens"), which First Lien Adequate Protection Replacement Liens on such DIP Collateral shall be subject and subordinate only to the DIP Liens, the Prepetition Prior Liens, and the Carve-Out and shall be senior in priority to the Prepetition First Liens, the Second Lien Adequate Protection Replacement Liens (as defined below), and the Prepetition Second

37

Liens. The First Lien Adequate Protection Replacement Liens and the First Lien Adequate Protection Superpriority Claim (as defined below) (A) shall not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code or, subject to entry of the Final Order, section 506(c) of the Bankruptcy Code or the "equities of the case" exception of section 552 of the Bankruptcy Code, (B) shall not be subordinate to, or *pari passu* with, (x) any lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (y) any intercompany or affiliate liens of the Debtors, and (C) shall be valid and enforceable against any trustee or any other estate representative appointed in the Cases or any Successor Cases, and/or upon the dismissal of any of the Cases.

(iii)     First Lien Adequate Protection Superpriority Claims. To the extent of Diminution in Value of the Prepetition First Lien Collateral, the Prepetition First Lien Secured Parties are hereby further granted allowed superpriority administrative claims (such adequate protection superpriority claims, the "First Lien Adequate Protection Superpriority Claims"), pursuant to section 507(b) of the Bankruptcy Code, with priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113, and 1114 and any other provision of the Bankruptcy Code, junior only to the DIP Superpriority Claims and the Carve-Out to the extent provided herein and in the DIP Loan Documents, and payable from and having recourse to all of the DIP Collateral; provided, however, that the Prepetition First Lien Secured Parties shall not receive or retain any payments, property, or other amounts in respect of the First Lien Adequate Protection Superpriority Claims unless and until (x) all DIP Obligations

have been Paid in Full (as defined below). Subject to the relative priorities set forth above, the Adequate Protection Superpriority Claims against each Debtor shall be against each Debtor on a joint and several basis. For purposes of this Interim Order, the terms "Paid in Full," "Repaid in Full" and "Payment in Full" shall mean, with respect to any referenced DIP Obligations, Prepetition First Lien Obligations and/or Prepetition Second Lien Obligations, (i) the indefeasible payment in full in cash of such obligations and (ii) the termination of all credit commitments under the DIP Loan Documents, Prepetition First Lien Loan Documents and/or Prepetition Second Lien Loan Documents, as applicable.

(iv)     Further Adequate Protection. As further Adequate Protection, the Debtors (A) have committed, as set forth in this Interim Order, to adhere to the Sale Process Deadlines and (B) shall simultaneously provide copies of any reports sent to the DIP Agent or the Prepetition Second Lien Secured Parties as may be required under this Interim Order or the DIP Credit Agreement to the Prepetition First Lien Secured Agent.

(v)     Interest and Professional Fees. As further adequate protection, and without limiting any rights of the Prepetition First Lien Secured Agent and the other Prepetition First Lien Secured Parties under section 506(b) of the Bankruptcy Code which are hereby preserved, and in consideration, and as a requirement, for obtaining the consent of the Prepetition First Lien Secured Parties to the entry of this Interim Order and the Debtors' consensual use of Cash Collateral as provided herein, the Debtors shall (i) pay or reimburse currently the Prepetition First Lien Secured Agent for any and all of its accrued and past-due fees, costs, expenses, and charges to the extent, and at the times, payable under the Prepetition First Lien Loan Documents, (ii) on the last day of each calendar month commencing after the Closing Date, pay to the Prepetition First Lien Secured Agent for prompt distribution to the applicable

39

Prepetition First Lien Secured Parties any and all of the interest accruing on the Prepetition First Lien Obligations under the Prepetition First Lien Secured Credit Agreement at the non-default rate (without prejudice to the rights of the Prepetition First Lien Secured Agent and other Prepetition First Lien Secured Parties to subsequently seek and obtain payment of all or any of such interest at the default rate retroactive to the Petition Date), and (iii) pay currently all reasonable out-of-pocket fees, costs, and expenses of the Prepetition First Lien Secured Agent (including, without limitation, the fees, costs, and expenses of counsel and financial advisors for the Prepetition First Lien Secured Agent), in the case of each of sub-clauses (i), (ii), and (iii) above, all whether accrued prepetition or postpetition and without further notice (except as provided in Paragraph 20(b) below with respect to postpetition professional fees, costs, and expenses), motion, or application to, order of, or hearing before, this Court.

(vi)     Consent to Priming and Adequate Protection. The Prepetition First Lien Secured Agent, on behalf of the other Prepetition First Lien Secured Parties, consents to the Prepetition First Lien Secured Parties' Adequate Protection and the priming provided for herein; provided, however, that such consent of the Prepetition First Lien Secured Agent to the priming of the Prepetition First Liens, the use of Cash Collateral, and the sufficiency of the Prepetition First Lien Secured Parties' Adequate Protection provided for herein is expressly conditioned upon the entry of this Interim Order, and such consent shall not be deemed to extend to any other Cash Collateral usage or other replacement financing or debtor-in-possession financing other than the DIP Facility provided under the DIP Loan Documents; and provided, further, that such consent shall be of no force and effect in the event this Interim Order is not entered or is entered and subsequently reversed, modified, stayed, or amended (unless such reversal, modification, stay, or amendment is acceptable to the Prepetition First Lien Secured Agent and the Prepetition

40

First Lien Secured Lenders) or the DIP Loan Documents and DIP Facility as set forth herein are not approved; and provided, further, that in the event of the occurrence of the Maturity Date (as defined in the DIP Credit Agreement), nothing herein shall alter the burden of proof set forth in the applicable provisions of the Bankruptcy Code at any hearing concerning the continued use of Prepetition Collateral (including Cash Collateral) by the Debtors.

(vii)    Right to Credit Bid.  Each of the DIP Agent (on behalf of the DIP Secured Parties) and the Prepetition First Lien Secured Agent (on behalf of the Prepetition First Lien Secured Parties) or their respective assignees, designees, or successors, shall have the right to "credit bid" up to the amount of the DIP Obligations and the Prepetition First Lien Obligations (including the First Lien Adequate Protection Superpriority Claim to the extent such First Lien Adequate Protection Superpriority Claim has any value) during any sale of all or any portion of the DIP Collateral, including, without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any reorganization plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code.    The DIP Agent and the Prepetition First Lien Secured Agent have the absolute right to assign, transfer, sell, or otherwise dispose of their rights to credit bid.

5.    **Adequate Protection for Prepetition Second Lien Secured Parties**.    In consideration for the use of the Prepetition Collateral (including Cash Collateral) and the priming of the Prepetition Second Liens, the Prepetition Second Lien Secured Parties shall receive the following adequate protection (collectively referred to as the "Prepetition Second Lien Secured Parties' Adequate Protection" and, together with the Prepetition First Lien Secured Parties' Adequate Protection, the "Prepetition Secured Parties' Adequate Protection"):

(i)    Second Lien Adequate Protection Replacement Liens.  To the extent there

41

is a diminution in value of the interests of the Prepetition Second Lien Secured Parties in the Prepetition Second Lien Collateral (including Cash Collateral) from and after the Petition Date resulting from the use, sale, or lease by the Debtors of the Prepetition Second Lien Collateral (including Cash Collateral), the granting of the DIP Superpriority Claims and the First Lien Adequate Protection Superpriority Claims, the granting of the priming DIP Liens and the granting of the First Lien Adequate Protection Replacement Liens, the subordination of the Prepetition Second Liens thereto and to the Carve-Out, and the imposition or enforcement of the automatic stay of section 362(a) of the Bankruptcy Code ("Diminution in Value of the Prepetition Second Lien Collateral," and collectively with the Diminution in Value of the Prepetition First Lien Collateral, "Diminution in Value"), the Prepetition Second Lien Trustee, for the benefit of all the Prepetition Second Lien Secured Parties, is hereby granted, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e), and 364 of the Bankruptcy Code, replacement Liens upon all of the DIP Collateral, except Avoidance Actions other than Postpetition Transfer Avoidance Actions (such adequate protection replacement liens, the "Second Lien Adequate Protection Replacement Liens" and, together with the First Lien Adequate Protection Replacement Liens, the "Adequate Protection Replacement Liens"), which Second Lien Adequate Protection Replacement Liens on such DIP Collateral shall be subject and subordinate only to the DIP Liens, the Prepetition Prior Liens, the Carve-Out, the First Lien Adequate Protection Replacement Liens, and the Prepetition First Liens and shall be senior in priority to the Prepetition Second Liens. The Second Lien Adequate Protection Replacement Liens and the Second Lien Adequate Protection Superpriority Claim (as defined below) (A) shall not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code or, subject to entry of the Final Order, section 506(c) of the Bankruptcy Code or the "equities of the case" exception of

42

section 552 of the Bankruptcy Code, (B) shall not be subordinate to, or *pari passu* with, (x) any lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (y) any intercompany or affiliate liens of the Debtors, and (C) shall be valid and enforceable against any trustee or any other estate representative appointed in the Cases or any Successor Cases, and/or upon the dismissal of any of the Cases.

(ii)     Second Lien Adequate Protection Superpriority Claims.  To the extent of Diminution in Value of the Prepetition Second Lien Collateral, the Prepetition Second Lien Secured Parties are hereby further granted allowed superpriority administrative claims (such adequate protection superpriority claims, the "Second Lien Adequate Protection Superpriority Claims" and, together with the First Lien Adequate Protection Superpriority Claims, the "Adequate Protection Superpriority Claims"), pursuant to section 507(b) of the Bankruptcy Code, with priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113, and 1114 and any other provision of the Bankruptcy Code, junior only to the DIP Superpriority Claim, the Carve-Out, the First Lien Adequate Protection Superpriority Claims, and the Prepetition First Lien Obligations to the extent provided herein, and payable from and having recourse to all of the DIP Collateral; provided, however, that the Prepetition Second Lien Secured Parties shall not receive or retain any payments, property, or other amounts in respect of the Second Lien Adequate Protection Superpriority Claims unless and until (x) all DIP Obligations have been Paid in Full, (y) all credit commitments under the DIP Loan Documents have been Paid in Full, and (z) the

DOCS_DE:173664.1 73521-001

Prepetition First Lien Obligations have been Paid in Full. Subject to the relative priorities set forth above, the Second Lien Adequate Protection Superpriority Claims against each Debtor shall be against each Debtor on a joint and several basis.

(iii)    <u>Professional Fees</u>. As further adequate protection, and without limiting any rights of the Prepetition Second Lien Trustee and the Prepetition Second Lien Noteholders under section 506(b) of the Bankruptcy Code which are hereby preserved, and in consideration, and as a requirement, for obtaining the consent of the Prepetition Second Lien Secured Parties to the entry of this Interim Order and the Debtors' consensual use of Cash Collateral as provided herein, the Debtors shall pay currently, the reasonable fees, costs, expenses, and charges, whether accrued prepetition or postpetition, of (a) one lead counsel and one local counsel for the Majority Prepetition Second Lien Secured Noteholders (the "<u>Majority Prepetition Second Lien Noteholders' Counsel</u>"), in an amount not to exceed, collectively and in the aggregate, $1,050,000 (exclusive of amounts paid prepetition), but no more than $210,000 per month shall be payable from the Approved Budget, (b) one financial advisor, for the Majority Prepetition Second Lien Secured Noteholders, in an amount not to exceed, in the aggregate, $900,000 (exclusive of amounts paid prepetition and not inclusive of such financial advisor's reasonable and documented expenses), but no more than $150,000 per month plus such financial advisor's reasonable and documented expenses shall be payable from the Approved Budget, and (c) one lead counsel and one local counsel, for the Second Lien Indenture Trustee (the "<u>Second Lien Indenture Trustee's Counsel</u>"), in an amount not to exceed, collectively and in the aggregate, $75,000 (exclusive of amounts paid prepetition), but no more than $15,000 per month shall be payable from the Approved Budget; provided, however, that in the event that the Majority Prepetition Second Lien Secured Noteholders' Counsel shall be retained as the Second Lien

Indenture Trustee's Counsel, then the Debtors shall instead pay currently, the reasonable fees, costs, expenses, and charges, whether accrued prepetition or postpetition, of the Second Lien Indenture Trustee's Counsel in an amount not to exceed, collectively and in the aggregate, $1,125,000 (inclusive of amounts already paid, at the time of such retention, to both Majority Prepetition Second Lien Secured Noteholders' Counsel and the Second Lien Trustee's Counsel), and the Debtors shall have no further obligation to pay, as adequate protection, the reasonable fees, costs, expenses and charges of the Majority Prepetition Second Lien Secured Noteholders' Counsel. To the extent that any of the Majority Prepetition Second Lien Secured Noteholders' Counsel and the Second Lien Indenture Trustee's Counsel do not incur fees in the amount budgeted for such counsel during the applicable budget period, the unused portion of the fees budgeted for each such counsel, as applicable, shall be rolled over into the next budget period. All parties reserve all rights to assert that any of the foregoing payments may be recharacterized as principal repayments on account of the Second Lien Notes. All defenses of the Majority Prepetition Second Lien Secured Noteholders and the Second Lien Indenture Trustee to any effort to recharacterize such payments are expressly reserved. Nothing in this subparagraph (iii) is intended to, nor shall be deemed to, be a cap on what the Majority Prepetition Second Lien Secured Noteholders and Prepetition Second Lien Trustee may assert is owed under the Prepetition Second Lien Loan Documents. Notwithstanding anything to the contrary in this Interim Order, upon a Termination Event, the Majority Prepetition Second Lien Secured Noteholders' Counsel and financial advisor and the Second Lien Indenture Trustee's Counsel (collectively, the "Noteholder/Trustee Professionals") shall be entitled to, and the Debtors shall pay, the reasonable fees, costs, expenses, and charges that have accrued and are unpaid as of the date on which such Termination Event has occurred subject to amounts set forth on the

45

Approved Budget, which amount shall be calculated on a per diem basis (the "Pre-Termination True-Up Payment"). The Pre-Termination True-Up Payment shall be paid by the Debtors to the Noteholder/Trustee Professionals on the date that payment of fees would otherwise be payable under the Approved Budget. The Debtors shall have no further obligation to pay the fees, costs, and expenses of the Noteholder/Trustee Professionals as adequate protection pursuant to this Interim Order after the Termination Date unless the Majority Prepetition Second Lien Secured Noteholders and/or the Second Lien Indenture Trustee, as applicable, waive such Termination Event.

(iv)     Further Adequate Protection. As further Adequate Protection, the Debtors (A) have committed, as set forth in this Interim Order, to adhere to the Sale Process Deadlines and (B) shall simultaneously provide copies of any reports sent to the DIP Agent or the Prepetition First Lien Secured Parties as may be required under this Interim Order or the DIP Credit Agreement to counsel to the Majority Prepetition Second Lien Secured Noteholders.

(v)     Consent to Priming and Adequate Protection. During the Interim Period, the Prepetition Second Lien Trustee and the Majority Prepetition Second Lien Secured Noteholders consent to the Prepetition Second Lien Secured Parties' Adequate Protection and the priming provided for herein; provided, however, that such consent of the Prepetition Second Lien Secured Parties to the priming of their Prepetition Second Liens, the use of Cash Collateral, and the sufficiency of the Prepetition Second Lien Secured Parties' Adequate Protection provided for herein is expressly conditioned upon the entry of this Interim Order, and such consent shall not be deemed to extend to any other replacement financing or debtor-in-possession financing other than the DIP Facility provided under the DIP Loan Documents; and provided, further, that such consent shall be of no force and effect in the event this Interim Order

46

is not entered or is entered and subsequently reversed, modified, stayed, or amended (unless such reversal, modification, stay, or amendment is acceptable to the Prepetition Second Lien Trustee and the Majority Prepetition Second Lien Secured Noteholders) or the DIP Loan Documents and DIP Facility as set forth herein are not approved; and provided, further, that in the event of the occurrence of the Maturity Date (as defined in the DIP Credit Agreement), nothing herein shall alter the burden of proof set forth in the applicable provisions of the Bankruptcy Code at any hearing concerning the continued use of Prepetition Collateral (including Cash Collateral) by the Debtors.

(vi)    Right to Credit Bid.   The Second Lien Indenture Trustee (on behalf of the Prepetition Second Lien Secured Noteholders) or its assignee, designee, or successor, shall have the right to "credit bid" up to the amount of the Prepetition Second Lien Obligations (including its Second Lien Adequate Protection Superpriority Claim to the extent such Second Lien Adequate Protection Superpriority Claim has any value) during any sale of all or any portion of the Prepetition Collateral and DIP Collateral (in the case of the DIP Collateral, only to the extent of the value of the Second Lien Adequate Protection Superpriority Claim resulting from a postpetition Diminution in Value of the Prepetition Second Lien Collateral as provided herein), or any deposit in connection with such sale, including, without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any reorganization plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code; provided, that any such "credit bid" provides for Payment in Full of all DIP Obligations and Prepetition First Lien Obligations at the closing of such transaction. The Second Lien Indenture Trustee has the absolute right to assign, transfer, sell, or otherwise dispose of its right to credit bid at the

47

direction of the holders of a majority in principal amount of the Prepetition Secured Second Lien Notes.

(vii)    Section 507(b) Reservation.   Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the respective Prepetition Secured Parties.  Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided herein to the Prepetition Secured Parties is insufficient to compensate for any Diminution in Value of each of their respective interests in the Prepetition Collateral during the Cases or any Successor Cases; provided, however, any such additional section 507(b) claims shall be subject to the same relative priority as such party's Adequate Protection Superpriority Claims, as provided in this Interim Order.

6.    **Automatic Postpetition Lien Perfection.**   This Interim Order shall be sufficient and conclusive evidence of the validity, enforceability, perfection, and priority of the DIP Liens and the Adequate Protection Replacement Liens without the necessity of (a) filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or (b) taking any other action to validate or perfect the DIP Liens and the Adequate Protection Replacement Liens or to entitle the DIP Liens and the Adequate Protection Replacement Liens to the priorities granted herein. Notwithstanding the foregoing, each of the DIP Agent and the Prepetition Secured Parties (in the latter case, solely with respect to the Adequate Protection Replacement Liens) may, each in their sole discretion, enter into and file, as applicable, financing statements, mortgages, security agreements, notices of liens, and other similar documents, and is hereby granted relief from the

48

automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices, and other agreements or documents shall be deemed to have been filed or recorded at the time and on the Petition Date. The applicable Debtors shall execute and deliver to the DIP Agent, the Prepetition First Lien Secured Agent, and/or the Prepetition Second Lien Trustee, as applicable, all such financing statements, mortgages, notices, and other documents as such parties may reasonably request to evidence and confirm the contemplated priority of, the DIP Liens and the Adequate Protection Replacement Liens, as applicable, granted pursuant hereto. Without limiting the foregoing, each of the DIP Agent, the Prepetition First Lien Secured Agent, and the Prepetition Second Lien Trustee, each in its discretion, may file a photocopy of this Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Interim Order. Subject to the entry of the Final Order, any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the payment of any fees or obligations to any governmental entity or non-governmental entity in order for the Debtors to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other DIP Collateral, is and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code, and shall have no force or effect with respect to the Liens on such leasehold interests or other applicable DIP Collateral or the proceeds of any assignment and/or sale thereof by any Debtor, in favor of the DIP Secured Parties in accordance with the terms of the DIP Loan Documents and this Interim Order or in favor of the Prepetition Secured Parties in accordance

with this Interim Order. To the extent that the Prepetition First Lien Secured Agent is the secured party under any security agreement, mortgage, leasehold mortgage, landlord waiver, financing statement, or account control agreements, listed as loss payee under any of the Debtors' insurance policies, or is the secured party under any of the Prepetition Secured Loan Documents, the DIP Agent shall also be deemed to be the secured party under such account control agreements, loss payee under the Debtors' insurance policies, and the secured party under each such Prepetition Secured Loan Document, shall have all rights and powers attendant to that position (including, without limitation, rights of enforcement), and shall act in that capacity and distribute any proceeds recovered or received first, for the benefit of the DIP Secured Parties in accordance with the DIP Loan Documents, second, subsequent to Payment in Full of all DIP Obligations, for the benefit of the Prepetition First Lien Secured Parties, and third, subsequent to Payment in Full of all Prepetition First Lien Obligations, for the benefit of the Prepetition Second Lien Secured Parties. The Prepetition First Lien Secured Agent shall serve as agent for the DIP Agent for purposes of perfecting its respective liens on all DIP Collateral that is of a type such that perfection of a lien therein may be accomplished only by possession or control by a secured party.

7. **Reservation of Certain Third Party Rights and Bar of Challenges and Claims**. The Debtors' Stipulations shall be binding upon the Debtors in all circumstances upon entry of this Interim Order. The Debtors' Stipulations shall be binding upon each other party in interest, including the Committee, unless such Committee or any other party in interest (including any Chapter 11 trustee appointed) other than the Debtors (or if the Cases are converted to cases under chapter 7 prior to the expiration of the Challenge Period (as defined below), the chapter 7 trustee in such Successor Case), *first*, commences, by the earlier of (x) with

DOCS_DE:173664.1 73521-001

respect to any Committee, sixty (60) calendar days from the formation of any Committee, and (y) solely if no Committee is formed, with respect to other parties in interest with requisite standing other than the Debtors or any Committee, seventy-five (75) calendar days following the date of entry of the Interim Order (such time period established by the earlier of clauses (x) and (y), as the same may be extended in accordance with this Paragraph 7, shall be referred to as the "Challenge Period," and the date that is the next calendar day after the termination of the Challenge Period in the event that either (i) no Challenge (as defined below) is properly raised during the Challenge Period or (ii) with respect only to those parties who properly file a Challenge (as defined below), such Challenge is fully and finally adjudicated, shall be referred to as the "Challenge Period Termination Date"), (A) a contested matter, adversary proceeding, or other action or "claim" (as defined in the Bankruptcy Code) challenging or otherwise objecting to the admissions, stipulations, findings, or releases included in the Debtors' Stipulations, or (B) a contested matter, adversary proceeding, or other action against any or all of the Prepetition Secured Parties in connection with or related to the Prepetition Secured Obligations, or the actions or inactions of any of the Prepetition Secured Parties arising out of or related to the Prepetition Secured Obligations or otherwise, including, without limitation, any claim against any or all of the Prepetition Secured Parties in the nature of a "lender liability" cause of action, setoff, counterclaim, or defense to the Prepetition Secured Obligations (including, but not limited to, those under sections 506, 544, 547, 548, 549, 550, and/or 552 of the Bankruptcy Code or by way of suit against any of the Prepetition Secured Parties) ((i) and (ii) collectively, the "Challenges" and, each individually, a "Challenge"), and *second*, obtains a final, non-appealable order in favor of such party in interest sustaining any such Challenge in any such timely-filed contested matter, adversary proceeding, or other action. If a Chapter 7 trustee or a Chapter 11

51

trustee is appointed, in each case prior to seventy-five (75) days after the entry of this Interim Order, the Challenge Period Termination Date with respect to such trustee only, shall be the later of (i) seventy-five (75) days after the entry of this Interim Order and (ii) the date that is twenty (20) days after the date on which such trustee is appointed. Upon the Challenge Period Termination Date and for all purposes in these Cases and any Successor Cases, (i) all payments made to or for the benefit of the Prepetition Secured Parties pursuant to, or otherwise authorized by, this Interim Order or otherwise (whether made prior to, on, or after the Petition Date) shall be indefeasible and not be subject to counterclaim, set-off, subordination, recharacterization, defense, or avoidance, (ii) any and all such Challenges by any party in interest shall be deemed to be forever released, waived, and barred; provided, however, that solely as against the Prepetition Second Lien Secured Parties (but not the DIP Secured Parties or Prepetition First Lien Secured Parties), any dispute as to the value of the Prepetition Collateral or the DIP Collateral shall not be deemed waived by the Debtors or any other party in interest; (iii) the Prepetition First Lien Obligations shall be deemed to be a fully allowed secured claim within the meaning of section 506 of the Bankruptcy Code (which claim and liens shall have been deemed satisfied in full by the repayment of the Prepetition First Lien Obligations as provided herein), (iv) the Prepetition Second Lien Obligations shall be deemed to be a fully allowed claim (subject to the provisions set forth in this Interim Order), (v) the Debtors' Stipulations, including the release provisions therein, shall be binding on all parties in interest, including any Committee. Notwithstanding the foregoing, to the extent any Challenge is timely asserted in any such adversary proceeding or contested matter, the Debtors' Stipulations and the other provisions in clauses (i) through (vi) in the immediately preceding sentence shall nonetheless remain binding and preclusive on any Committee and on any other party in interest from and after the Challenge

52

Period Termination Date, except to the extent that such Debtors' Stipulations or the other provisions in clauses (i) through (vi) of the immediately preceding sentence were expressly challenged in such adversary proceeding, contested matter, or other action. The Challenge Period may only be extended with the written consent of the Prepetition First Lien Secured Agent or the Prepetition Second Lien Trustee, as applicable and in their sole discretion. Notwithstanding any provision to the contrary herein, nothing in this Interim Order shall be construed to grant standing on any party in interest, including any Committee, to bring any Challenge on behalf of the Debtors' estates. The failure of any party in interest, including any Committee, to obtain an order of this Court granting standing to bring any Challenge on behalf of the Debtors' estates shall not be a defense to failing to commence a Challenge prior to the Challenge Period Termination Date as required under this Paragraph 7. For purposes of this Paragraph 7 (other than the first sentence hereof regarding the effectiveness of the other Debtor Stipulations upon entry of the Interim Order), the Debtors' Stipulations in favor of the Prepetition First Lien Secured Parties shall be deemed to cover the Unscheduled Leases in all respects and any Challenges to the Prepetition First Lien Secured Parties' liens on the Unscheduled Leases shall be governed by this Paragraph 7.

8.     **Carve-Out**.  Subject to the terms and conditions contained in this Paragraph 8, each of the DIP Liens, the DIP Superpriority Claims, the Prepetition Liens, the Adequate Protection Replacement Liens, and the Adequate Protection Superpriority Claims shall be subject and subordinate to payment of the Carve-Out (as defined below):

(i)     <u>Carve-Out</u>. For purposes of this Interim Order, "Carve-Out" means (a) all unpaid fees required to be paid in these Cases to the clerk of the Bankruptcy Court and to the office of the United States Trustee under 28 U.S.C. § 1930(a)(6); (b) subject to the terms and

conditions of this Interim Order, the unpaid fees, costs, and disbursements of professionals retained by the Debtors in these Cases and the Debtors' ordinary course professionals (collectively, the "Debtors' Professionals") that are incurred prior to the delivery by the DIP Agent of a Carve-Out Trigger Notice (as defined below) and that are allowed pursuant to an order of the Court under sections 327, 330, or 363 of the Bankruptcy Code and remain unpaid after application of any retainers being held by such professionals; (c) subject to the terms and conditions of this Interim Order, the reasonable unpaid fees, costs, and disbursements of professionals retained by the Committee in these Cases (collectively, the "Committee's Professionals") and all reasonable unpaid expenses of the members of any Committee ("Committee Members") that are incurred prior to the delivery by the DIP Agent of a Carve-Out Trigger Notice and in accordance with the Approved Budget, and that are allowed by the Court under sections 328, 330, or 1103 of the Bankruptcy Code and remain unpaid after application of any retainers being held by such professionals, in an aggregate amount (for both Committee Members and the Committee's Professionals) not to exceed $750,000; (d) the reasonable unpaid fees, costs, and disbursements of the Debtors' Professionals that are incurred after the delivery of a Carve-Out Trigger Notice, that are allowed by the Court under sections 327 or 363 of the Bankruptcy Code, in an aggregate amount not to exceed $1,000,000 (inclusive of any prepetition retainers held by such professionals) (the "Debtors' Professionals Carve-Out Cap"); and (e) the reasonable unpaid fees, costs, and disbursements of the Committee Professionals and the reasonable unpaid expenses of Committee Members that are incurred after the delivery of a Carve-Out Trigger Notice, that are allowed by the Court under sections 328 or 1103 of the Bankruptcy Code, in an aggregate amount (for both Committee Members and the Committee's Professionals) not to exceed $200,000 (inclusive of any retainers held by such professionals) (the

54

"Committee Carve-Out Cap" and, together with the Debtors' Professionals Carve-Out Cap, the "Post-Default Carve-Out Cap") (clauses (a), (b), (c), (d), and (e), collectively, the "Carve-Out"). Notwithstanding the foregoing, with respect solely to the Prepetition Second Lien Secured Parties, the Carve-Out shall also include, to the extent approved by the Court, (y) amounts due and owing on account of the management incentive program, and (z) any success fee due and owing to the Debtors' financial advisor, Imperial Capital, LLC ("Imperial"), set forth in its engagement letter, dated June 13, 2011, with the Debtors, and (z) provided that the DIP Agent, the Prepetition First Lien Secured Agent, and the Majority Prepetition Second Lien Secured Noteholders shall have the right to object to any motion seeking to approve any such success fee, any management incentive program as well as the Debtors' application to employ Imperial. The term "Carve-Out Trigger Notice" shall mean a written notice delivered by the DIP Agent to the Debtors' lead counsel, the United States Trustee, and lead counsel to any Committee appointed in these Cases, which notice may be delivered at any time following the occurrence and during the continuation of any Termination Event. Upon the delivery of a Carve-Out Trigger Notice, (A) the Debtors shall immediately fund into the Carve-Out Account (as defined below) an amount equal to the Post-Default Carve-Out Cap, and (B) until the Carve-Out Account (as defined below) has been funded in an additional amount equal to the unpaid fees and expenses that were incurred prior to the delivery of the Carve-Out Trigger Notice in accordance with (b) and (c) above, that have not been disallowed by the Court and for which such Debtors' Professionals or Committee's Professionals have submitted a copy of an application to the Court or monthly fee statement, net proceeds of the DIP Collateral thereafter realized by or remitted to the Prepetition First Lien Secured Agent that, but for the Carve-Out, would be utilized by the Prepetition First Lien Secured Agent to permanently repay the Prepetition First Lien Secured

55

Obligations (x) shall be transferred by the Debtors into a segregated account established by the Debtors (the "Carve-Out Account") and (y) shall not reduce the Prepetition First Lien Secured Obligations. All amounts deposited in the Carve-Out Account shall continue to be subject to the DIP Liens and Adequate Protection Liens such that, upon final payment of all amounts due and owing under the Carve-Out, then any funds remaining in the Carve-Out Account shall be remitted to the DIP Agent, the Prepetition First Lien Secured Agent, or the Prepetition Second Lien Trustee, as applicable, in accordance with this Interim Order, for application in accordance with this Interim Order. The DIP Agent shall be entitled to establish and maintain reserves against borrowing availability under the DIP Facility on account of the Carve-Out in accordance with the terms of the DIP Credit Agreement. No amounts set forth in this subparagraph (i) with respect to the Post-Default Carve-Out Cap may be modified without the prior written consent of the DIP Agent, the Prepetition First Lien Secured Agent, and the Majority Prepetition Second Lien Secured Noteholders.

(ii)     No Direct Obligation to Pay Professional Fees; No Waiver of Right to Object to Fees. The Prepetition First Lien Secured Agent and the other Prepetition First Lien Secured Parties, and the Prepetition Second Lien Trustee and the other Prepetition Second Lien Secured Parties, shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any of the Debtors' Professionals or Committee's Professionals incurred in connection with the Cases or any Successor Cases under any chapter of the Bankruptcy Code. Nothing in this Interim Order or otherwise shall be construed (i) to obligate the Prepetition First Lien Agent or any other Prepetition Secured Parties in any way to pay compensation to, or to reimburse expenses of, any of the Debtors' Professionals or Committee's Professionals, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement or

DOCS_DE:173664.1 73521-001

(ii) to increase the Carve-Out if actual allowed fees and expenses of any of the Debtors' Professionals or Committee's Professionals are higher in fact than the Carve-Out Cap. The respective Prepetition Secured Parties' liens and claims shall be subject to the Carve-Out as set forth in this Interim Order. Notwithstanding any provision in this Paragraph 8 to the contrary, no portion of the Carve-Out, Cash Collateral, Prepetition Collateral, DIP Collateral or proceeds of the DIP Facility shall be utilized for the payment of professional fees and disbursements to the extent restricted under Paragraph 16 hereof. Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any of the Debtors, any Committee, any other official or unofficial committee in these Cases, or of any other person or entity, or shall affect the right of any DIP Secured Party or any Prepetition Secured Party to object to the allowance and payment of such fees and expenses.

(iii) <u>Payment of Allowed Professional Fees Prior to the Termination Declaration Date</u>. Prior to the occurrence of the Termination Declaration Date, the Debtors shall be permitted to pay allowed fees of the Debtors' Professionals and the Committee's Professionals (to the extent the fees of the Committee's Professionals were incurred in accordance with the Approved Budget), subject to the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any interim compensation procedures order entered by this Court. The amounts paid prior to the Carve-Out Trigger Notice shall not reduce the Carve-Out.

9.    **Waiver of 506(c) Claims**. Subject to the entry of the Final Order, as a further condition of the DIP Facility and any obligation of the DIP Secured Parties to make credit extensions pursuant to the DIP Loan Documents (and their consent to the payment of the Carve-Out to the extent provided herein), no costs or expenses of administration of the Cases or any Successor Cases shall be charged against or recovered from or against any or all of the

Prepetition Secured Parties, the Prepetition Collateral, and the Cash Collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the Prepetition First Lien Secured Agent, or the Prepetition Second Lien Trustee, as the case may be, and no such consent shall be implied from any other action, inaction, or acquiescence of any or all of the Prepetition First Lien Secured Parties and the Prepetition Second Lien Secured Parties.

10. **After-Acquired Property**. Except as otherwise provided in this Interim Order, pursuant to section 552(a) of the Bankruptcy Code, all property acquired by the Debtors on or after the Petition Date is not, and shall not be, subject to any Lien of any person or entity resulting from any security agreement entered into by the Debtors prior to the Petition Date, except to the extent that such property constitutes proceeds of property of the Debtors that is subject to a valid, enforceable, perfected, and unavoidable Lien as of the Petition Date which is not subject to subordination under the Bankruptcy Code or other provisions or principles of applicable law.

11. **Protection of DIP Secured Parties' Rights**.

(a) Unless the requisite DIP Secured Parties under the DIP Loan Documents shall have provided their prior written consent or all DIP Obligations have been Paid in Full, there shall not be entered in these proceedings, or in any Successor Cases, any order which authorizes any of the following: (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other Lien on all or any portion of the DIP Collateral and/or that is entitled to administrative priority status, in each case which is superior to or *pari passu* with the DIP Liens, the DIP Superpriority Claims, and the other DIP Protections granted pursuant to this Interim Order to the DIP Secured Parties; or (ii) the use of

Cash Collateral for any purpose other than to Pay in Full the DIP Obligations or as otherwise permitted in the DIP Loan Documents and this Interim Order.

(b) The Debtors (and/or their legal and financial advisors in the case of clauses (ii) through (iv) below) will (i) maintain books, records, and accounts to the extent and as required by the DIP Loan Documents, (ii) reasonably cooperate, consult with, and provide to the DIP Agent and the Prepetition Secured Parties all such information as required or allowed under the DIP Loan Documents or the provisions of this Interim Order, (iii) permit representatives of the DIP Agent and the Prepetition Secured Parties such rights to visit and inspect any of the Debtors' respective properties, to examine and make abstracts or copies from any of their respective books and records, to conduct a collateral audit and analysis of their respective inventory and accounts, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations, and accounts with their respective officers, employees, and independent public accountants as and to the extent required by the DIP Loan Documents, and (iv) permit the DIP Agent, the Prepetition First Lien Secured Agent, and the Majority Prepetition Second Lien Secured Noteholders and their respective representatives to consult with the Debtors' management and advisors on matters concerning the general status of the Debtors' businesses, financial condition, and operations.

12. **Proceeds of Subsequent Financing**. Without limiting the provisions and protections of Paragraph 11 above, if at any time prior to the Payment in Full of all the DIP Obligations (including subsequent to the confirmation of any Chapter 11 plan or plans with respect to any of the Debtors), the Debtors' estates, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed shall obtain credit or incur debt

59

pursuant to sections 364(b), 364(c), 364(d), or any other provision of the Bankruptcy Code in violation of the DIP Loan Documents, then all of the cash proceeds derived from such credit or debt and all Cash Collateral shall immediately be turned over to the DIP Agent until Payment in Full of the DIP Obligations.

13. **Cash Collection**. From and after the date of the entry of this Interim Order, all collections and proceeds of any DIP Collateral or Prepetition Collateral or services provided by any Debtor and all Cash Collateral which shall at any time come into the possession, custody, or control of any Debtor, or to which any Debtor is now or shall become entitled at any time, shall be promptly deposited in the same bank accounts into which the collections and proceeds of the Prepetition Collateral were deposited under the Prepetition Secured Loan Documents (or in such other accounts as are designated by the DIP Agent from time to time).

14. **Disposition of DIP Collateral**. Unless the DIP Obligations and the Prepetition First Lien Obligations are Paid in Full upon the closing of a sale, the Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral without the prior written consent of the requisite DIP Secured Parties under the DIP Loan Documents and the Prepetition First Lien Secured Agent (and no such consent shall be implied from any other action, inaction, or acquiescence by any DIP Secured Party or Prepetition First Lien Secured Party or any order of this Court), except as permitted in the DIP Loan Documents and/or the Prepetition First Lien Loan Documents, as applicable, and this Interim Order.

15. **Rights and Remedies Upon Termination Event**.

(a) Any automatic stay otherwise applicable to the DIP Secured Parties is hereby modified, without requiring prior notice to or authorization of this Court, to the extent necessary to permit the DIP Secured Parties to exercise the following remedies immediately

upon the occurrence and during the continuance of any Termination Event (as set forth in section 2(f) of this Interim Order): (i) terminate the DIP Obligations; (ii) declare the principal amount then outstanding of, and the accrued interest on, the DIP Obligations and all other amounts payable by the Debtors under the DIP Loan Documents to be forthwith due and payable, whereupon such amounts shall be immediately due and payable without presentment, demand, protest, or other formalities of any kind, all of which are hereby expressly waived by the Debtors; (iii) terminate the DIP Facility and any DIP Loan Document as to any future liability or obligation of the DIP Secured Parties, but without affecting any of the DIP Obligations or the DIP Liens securing the DIP Obligations; (iv) declare a termination, reduction, or restriction on the ability of the Debtors to use any Cash Collateral (except as permitted in Paragraph 15(b) below), including Cash Collateral derived solely from the proceeds of DIP Collateral (any such declaration to be made to the Debtors, the Prepetition First Lien Secured Agent, the Prepetition Second Lien Trustee, the Majority Prepetition Second Lien Secured Noteholders, the respective lead counsel to any Committee, and the United States Trustee shall be referred to herein as a "Termination Declaration" and the date which is the earliest to occur of any such Termination Declaration being herein referred to as the "Termination Declaration Date"); (v) reduce any claim to judgment; (vi) take any other action permitted by law; and/or (vii) take any action permitted to be taken by the DIP Loan Documents during the continuance of any Termination Event.

(b)     Five (5) Business Days following a Termination Declaration Date, the DIP Agent shall have relief from the automatic stay and may foreclose on all or any portion of the DIP Collateral, collect accounts receivable, and apply the proceeds thereof to the DIP Obligations, occupy the Debtors' premises to sell or otherwise dispose of the DIP Collateral, or

otherwise exercise remedies against the DIP Collateral permitted by applicable nonbankruptcy law. During the 5 Business Day period after a Termination Declaration Date, the Debtors, the DIP Agent, the Prepetition First Lien Secured Agent, the Majority Prepetition Second Lien Secured Noteholders, and any Committee shall be entitled to an emergency hearing before the Court for the sole purpose of contesting whether a Termination Event has occurred and section 105 of the Bankruptcy Code may not be invoked by the Debtors, the Committee, or any other party in interest in an effort to restrict or preclude any DIP Secured Party from exercising any rights or remedies set forth in this Interim Order or the DIP Loan Documents. Unless during such period the Court determines that a Termination Event has not occurred and/or is not continuing, the automatic stay, as to the DIP Secured Parties, shall automatically terminate at the end of such 5 Business Day period, without further notice or order. During such 5 Business Day period, the Debtors may not use Cash Collateral or any amounts under the DIP Credit Facility except to pay payroll and other expenses critical to keep the business of the Debtors operating in accordance with the Approved Budget.

(c)     Upon the occurrence and during the continuance of a Termination Event, each of the Prepetition First Lien Agent and the Majority Prepetition Second Lien Secured Noteholders may declare a termination, reduction, or restriction on the ability of the Debtors to use any Cash Collateral by providing notice of such Termination Event to the Debtors, the DIP Agent, the Prepetition First Lien Secured Agent or Majority Prepetition Second Lien Noteholders, as applicable, the lead counsel to any Committee, and the United States Trustee (a "Cash Collateral Termination Declaration," and the date on which such notice is given shall be referred to as the "Cash Collateral Termination Declaration Date"). Subject to paragraph 15(d)

of this Interim Order, on the Cash Collateral Termination Declaration Date, the Debtors' right to use Cash Collateral shall automatically cease.

(d)     Within five (5) Business Days following a Cash Collateral Termination Declaration Date, the Debtors and any Committee shall be entitled to seek an emergency hearing before the Court (to be held on the first available date on the Court's calendar) to request use of Cash Collateral without the consent of the Prepetition Second Lien Secured Parties in accordance with the Bankruptcy Code. Unless the Court determines that the Debtors may use Cash Collateral, (i) the Debtors' right to use of Cash Collateral under, but no other provision of, this Interim Order shall automatically terminate at the time the Court so orders, and (ii) the automatic stay, as to the Prepetition Second Lien Secured Parties, shall automatically terminate at the time the Court so orders, without further notice or order; provided, however, that the exercise of remedies by the Prepetition Second Lien Secured Parties shall be subject to the limitations, if any, in this Interim Order and the Intercreditor Agreement. Until the Court determines that the Debtors may not use Cash Collateral, the Debtors may not use Cash Collateral or any amounts under the DIP Facility except to pay payroll and other expenses critical to keep the business of the Debtors operating in accordance with the Approved Budget.

(e)     All proceeds realized in connection with the exercise of the rights and remedies of the DIP Secured Parties or the Prepetition Secured Parties shall be turned over to the DIP Agent for application to the other DIP Obligations under, and in accordance with, the provisions of the DIP Loan Documents until Payment in Full of the DIP Obligations; provided, that in the event of the liquidation of the Debtors' estates after the occurrence and during the continuance of a Termination Event, the Carve-Out shall be funded into a segregated account exclusively (i) first, from proceeds of any unencumbered assets of the Debtors, and (ii) then from

DOCS_DE:173664.1 73521-001

Cash Collateral received by the DIP Agent subsequent to the date of termination of the DIP Obligations and prior to the distribution of any such Cash Collateral to any other parties in interest.

(f)     Subject to entry of the Final Order, and notwithstanding anything contained herein to the contrary, and without limiting any other rights or remedies of the DIP Agent or the other DIP Secured Parties contained in this Interim Order or the DIP Loan Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Loan Documents, upon five Business Days' written notice, to the Debtors and any landlord, lienholder, licensor, or other third party owner of any leased or licensed premises or intellectual property, that a Termination Event has occurred and is continuing, the DIP Agent (i) may, unless otherwise provided in any separate agreement by and between the applicable landlord or licensor and the DIP Agent (the terms of which shall be reasonably acceptable to the parties thereto), enter upon any leased or licensed premises of the Debtors for the purpose of exercising any remedy with respect to Collateral located thereon and (ii) shall be entitled to all of the Debtors' rights and privileges as lessee or licensee under the applicable license and to use any and all trademarks, trade names, copyrights, licenses, patents, or any other similar assets of the Debtors, which are owned by or subject to a Lien of any third party and which are used by Debtors in their businesses, in either the case of subparagraph (i) or (ii) of this Paragraph 15(d) without interference from lienholders or licensors thereunder, subject to such lienholders' or licensors' rights under applicable law; provided, however, that the DIP Agent, on behalf of the DIP Secured Parties, shall pay only rent and additional rent, fees, royalties, or other obligations of the Debtors that first arise after the written notice referenced above from the DIP Agent and that accrue during the period of such occupancy or use by such DIP Agent calculated on a *per diem*

basis. Nothing herein shall require the Debtors, the DIP Agent, or the other DIP Secured Parties to assume any lease or license under Bankruptcy Code section 365(a) as a precondition to the rights afforded to the DIP Agent and the other DIP Secured Parties in this Paragraph 15(d).

(g)     The automatic stay imposed under Bankruptcy Code section 362(a) is hereby modified pursuant to the terms of this Interim Order and the DIP Loan Documents as necessary to (i) permit the Debtors to grant the Adequate Protection Replacement Liens and the DIP Liens and to incur all liabilities and obligations to the Prepetition Secured Parties and the DIP Secured Parties under the DIP Loan Documents, the DIP Facility, and this Interim Order, (ii) authorize the DIP Secured Parties and the Prepetition Secured Parties to retain and apply payments hereunder, and (iii) otherwise to the extent necessary to implement and effectuate the provisions of this Interim Order.

(h)     Upon the occurrence of any Termination Event other than a DIP Default Termination Event that is not cured within three (3) Business Days of the occurrence thereof (regardless of whether such Termination Event is waived by the DIP Agent or the Prepetition First Lien Secured Parties), any or all of the Sale Process Deadlines that are set for at least twenty-five (25) calendar days following receipt of the Deadline Acceleration Notice shall automatically be accelerated by twenty (20) calendar days. Upon the occurrence of any DIP Default Termination Event (regardless of whether such DIP Default Termination Event is waived by the DIP Agent or the Prepetition First Lien Secured Parties), the Debtors shall not have the right to extend the Qualified Bid Deadline and the deadlines thereafter by two weeks as provided for herein, and the Majority Prepetition Second Lien Secured Noteholders may seek a court order, on five (5) Business Days' notice, to terminate the use of Cash Collateral. From and after the entry of a Final Order, if the Debtors' aggregate legal counsel fees in any given Four Week

Testing Period or cumulatively throughout the Cases (i) exceed 150% of their budgeted amounts and (ii) are above budget by $400,000 or more, the Debtors shall not have the right to extend the Qualified Bid Deadline and the deadlines thereafter by two weeks as provided for herein, and any of the DIP Agent, the Prepetition First Lien Secured Agent, or the Majority Prepetition Second Lien Secured Noteholders may seek a court order, on five (5) Business Days' notice, to terminate the use of Cash Collateral. The Majority Prepetition Second Lien Secured Noteholders shall provide a written notice (a "Deadline Acceleration Notice") of the occurrence of each of the foregoing to the Debtors, the DIP Agent, the Prepetition First Lien Secured Agent, and the Committee upon the occurrence thereof. For the avoidance of doubt, nothing in this Paragraph 15(h) shall limit the remedies of the DIP Secured Parties and the Prepetition First Lien Secured Parties, respectively, provided for in this Interim Order and the DIP Loan Documents upon a Termination Event.

16. **Restriction on Use of Proceeds.** Notwithstanding anything herein to the contrary, no loans and/or proceeds from the DIP Facility, DIP Collateral, Cash Collateral (including any prepetition retainer held by any professionals for the below-referenced parties), Prepetition Collateral, or any portion of the Carve-Out may be used by (a) any Committee or trustee or other estate representative appointed in the Cases or any Successor Cases, or any other person, party, or entity to (or to pay any professional fees and disbursements incurred in connection therewith) to investigate or prosecute any litigation in connection with the value of the Prepetition Collateral or the DIP Collateral; and (b) any of the Debtors, any Committee, and any trustee or other estate representative appointed in the Cases or any Successor Cases, or any other person, party, or entity to (or to pay any professional fees and disbursements incurred in connection therewith): (i) request authorization to obtain postpetition loans or other financial

66

accommodations pursuant to Bankruptcy Code section 364(c) or (d), or otherwise, other than from the DIP Secured Parties; (ii) investigate (except as set forth below), assert, join, commence, support, or prosecute any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination, or similar relief against, or adverse to the interests of, in any capacity, any or all of the DIP Secured Parties, the Prepetition Secured Parties, and their respective officers, directors, employees, agents, attorneys, affiliates, assigns, or successors, with respect to any transaction, occurrence, omission, action, or other matter (including formal discovery proceedings in anticipation thereof), including, without limitation, (A) any Challenges and any Avoidance Actions or other actions arising under chapter 5 of the Bankruptcy Code; (B) any action with respect to the validity, enforceability, priority, and extent of the DIP Obligations and/or the Prepetition Secured Obligations, or the validity, extent, and priority of the DIP Liens, the Prepetition Liens, or the Adequate Protection Replacement Liens (including, with respect to the Prepetition First Lien Secured Parties only, the value of the DIP Collateral); (C) any action seeking to invalidate, set aside, avoid, or subordinate, in whole or in part, the DIP Liens, the other DIP Protections, the Prepetition Liens, the Adequate Protection Replacement Liens, or the other Prepetition First Lien Secured Parties' Adequate Protection or Prepetition Second Lien Secured Parties' Adequate Protection; (D) except to contest the occurrence or continuance of any Termination Event as permitted in Paragraph 15, any action seeking, or having the effect of, preventing, hindering, or otherwise delaying any or all of the DIP Secured Parties' (and, after the Payment in Full of the DIP Obligations, the Prepetition First Lien Secured Parties', and after the Payment in Full of the Prepetition First Lien Obligations, the Prepetition Second Lien Secured Parties') assertion, enforcement, or realization on the Cash Collateral or the DIP Collateral in

accordance with the DIP Loan Documents or the Prepetition Secured Loan Documents, as applicable, or this Interim Order; and/or (E) any action seeking to modify any of the rights, remedies, priorities, privileges, protections, and benefits granted to any or all of the DIP Secured Parties and the Prepetition First Lien Secured Parties hereunder or under the DIP Loan Documents or the Prepetition Secured Loan Documents, as applicable; provided, however, up to $50,000 in the aggregate of the Carve-Out, any DIP Collateral, any Prepetition Collateral, any Cash Collateral or proceeds of the DIP Facility may be used by the Committee (to the extent such committee is appointed) to investigate (but not prosecute) the extent, validity, and priority of the Prepetition Secured Obligations, the Prepetition Liens, or any other claims against the Prepetition Secured Parties so long as such investigation occurs within the Challenge Period; (iii) pay any fees or similar amounts to any person (other than the Prepetition Secured Parties) who has proposed or may propose to purchase interests in any of the Debtors without the prior written consent of the DIP Agent; or (iv) use or seek to use Cash Collateral or sell or otherwise dispose of DIP Collateral, unless otherwise permitted hereby, without the consent of the DIP Secured Parties or the Prepetition Secured Parties, as applicable.

17. **Proofs of Claim**. Upon entry of the Final Order, the Prepetition First Lien Secured Parties and the Prepetition Second Lien Secured Parties will not be required to file proofs of claim in any of the Cases or Successor Cases for any claim allowed herein. The Debtors' Stipulations shall be deemed to constitute a timely filed proof of claim for the Prepetition First Lien Secured Parties and the Prepetition Second Lien Secured Parties. Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Cases or Successor Cases to the contrary, the Prepetition First Lien Secured Agent for the benefit of itself and the Prepetition First Lien Secured Lenders, and the Prepetition Second

Lien Trustee, for the benefit of itself and the Prepetition Second Lien Noteholders, are hereby authorized and entitled, in their sole discretion, but not required, to file (and amend and/or supplement, as they see fit) a proof of claim and/or aggregate proofs of claim in each of the Cases or Successor Cases for any claim allowed herein.

18.     **Preservation of Rights Granted Under the Interim Order**.

(a)     <u>No Non-Consensual Modification or Extension of Interim Order</u>.     The Debtors irrevocably waive any right to seek any amendment, modification, or extension of this Interim Order without the prior written consent of the DIP Agent and the Prepetition First Lien Secured Agent, and no such consent shall be implied by any other action, inaction, or acquiescence of the DIP Secured Parties or any of the Prepetition Secured Parties. In the event any or all of the provisions of this Interim Order are hereafter modified, amended, or vacated by a subsequent order of this Court or any other court, such modification, amendment, or vacatur shall not affect the validity, perfection, priority, allowability, enforceability, or non-avoidability of any advances, payments, or use of cash whether previously or hereunder, or lien, claim, or priority authorized or created hereby. Based on the findings set forth in this Interim Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility contemplated by this Interim Order, in the event any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated, or stayed by a subsequent order of this Court or any other court, the DIP Secured Parties and the Prepetition Secured Parties shall be entitled to the protections provided in section 364(e) of the Bankruptcy Code, and no such reversal, modification, vacatur, or stay shall affect (i) the validity, priority, or enforceability of any DIP Protections and the Prepetition Secured Parties' Adequate Protection granted or incurred prior to the actual receipt of written notice by the DIP Agent, the Prepetition First Lien Secured Agent, or

the Prepetition Second Lien Trustee, as the case may be, of the effective date of such reversal, modification, vacatur, or stay or (ii) the validity or enforceability of any lien or priority authorized or created hereby or pursuant to the DIP Loan Documents with respect to any DIP Obligations and the Prepetition Secured Parties' Adequate Protection. Notwithstanding any such reversal, modification, vacatur, or stay, any use of Cash Collateral or any DIP Obligations or Prepetition Secured Parties' Adequate Protection incurred or granted by the Debtors prior to the actual receipt of written notice by the DIP Agent, the Prepetition First Lien Secured Agent, or the Prepetition Second Lien Trustee, as applicable, of the effective date of such reversal, modification, vacatur, or stay shall be governed in all respects by the original provisions of this Interim Order, and the DIP Secured Parties and the Prepetition Secured Parties shall be entitled to all of the DIP Protections and Prepetition Secured Parties' Adequate Protection, as the case may be, and all other rights, remedies, liens, priorities, privileges, protections, and benefits granted in section 364(e) of the Bankruptcy Code, this Interim Order, and pursuant to the DIP Loan Documents with respect to all uses of Cash Collateral and all DIP Obligations and Prepetition Secured Parties' Adequate Protection.

(b)     Dismissal.  If any order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code), to the fullest extent permitted by law, that (i) the DIP Protections and the Prepetition Secured Parties' Adequate Protection shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations have been Paid in Full, the Prepetition First Lien Obligations have been Paid in Full, and the Prepetition Second Lien Obligations have been Paid in Full in cash or otherwise satisfied in full (and that all DIP Protections and the Prepetition Secured Parties' Adequate

70

Protection shall, notwithstanding such dismissal, remain binding on all parties in interest), and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such DIP Protections and the Prepetition Secured Parties' Adequate Protection.

(d)     Survival of Interim Order.  The provisions of this Interim Order and the DIP Loan Documents, any actions taken pursuant hereto or thereto, and all of the DIP Protections, the Prepetition Secured Parties' Adequate Protection, and all other rights, remedies, liens, priorities, privileges, protections, and benefits granted to any or all of the DIP Secured Parties and the Prepetition Secured Parties shall survive, and shall not be modified, impaired, or discharged by, the entry of any order confirming any plan of reorganization in any Case, converting any Case to a case under chapter 7, dismissing any of the Cases, withdrawing of the reference of any of the Cases or any Successor Cases or providing for abstention from handling or retaining of jurisdiction of any of the Cases in this Court, or terminating the joint administration of these Cases or by any other act or omission.  The terms and provisions of this Interim Order, including all of the DIP Protections, the Prepetition Secured Parties' Adequate Protection, and all other rights, remedies, liens, priorities, privileges, protections, and benefits granted to any or all of the DIP Secured Parties and the Prepetition Secured Parties, shall continue in full force and effect notwithstanding the entry of any such order, and such DIP Protections and Prepetition Secured Parties' Adequate Protection shall continue in these proceedings and in any Successor Cases, and shall maintain their respective priorities as provided by this Interim Order.  Subject to the provisions of this Interim Order and the DIP Loan Documents that permit the treatment of the DIP Obligations under the DIP Facility pursuant to the Plan or any other Chapter 11 plan with respect to any of the Debtors, the DIP Obligations shall not be discharged by the entry of an order confirming the Plan or any other such Chapter 11

71

plan, the Debtors having waived such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code.

19. **Insurance Policies**. Upon entry of this Interim Order, the DIP Agent and the DIP Lenders shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees on each insurance policy maintained by the Debtors which in any way relates to the Collateral.

20. **Other Rights and Obligations**.

(a) <u>Expenses</u>. As provided in the DIP Loan Documents, the applicable Debtors will pay all reasonable expenses incurred by the DIP Agent (including, without limitation, the reasonable fees and disbursements of all counsel for the DIP Agent and any internal or third-party appraisers, consultants, and auditors advising the DIP Agent) in connection with the preparation, execution, delivery, and administration of the DIP Loan Documents, this Interim Order, the Final Order, and any other agreements, instruments, pleadings, or other documents prepared or reviewed in connection with any of the foregoing, whether or not any or all of the transactions contemplated hereby or by the DIP Loan Documents are consummated.

(b) <u>Notice of Professional Fees</u>. Professionals for the DIP Agent, the Prepetition First Lien Secured Parties, and the Prepetition Second Lien Secured Parties (collectively, the "<u>Lender Professionals</u>") shall not be required to comply with the United States Trustee fee guidelines or submit invoices to the Court, United States Trustee, any Committee or any other party-in-interest absent further court order. Copies of summary invoices submitted to the Debtors by such Lender Professionals shall be forwarded by the Debtors to the United States Trustee, counsel for any Committee, and such other parties as the Court may direct. The

DOCS_DE:173664.1 73521-001

summary invoices shall be sufficiently detailed to enable a determination as to the reasonableness of such fees and expenses; provided, however, that such summary invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such summary invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine. If the Debtors, United States Trustee, or counsel for any Committee object to the reasonableness of the fees and expenses of any of the Lender Professionals and cannot resolve such objection within ten days of receipt of such invoices, the Debtors, United States Trustee, or the Committee, as the case may be, shall file with the Court and serve on such Lender Professionals an objection (the "Fee Objection") limited to the issue of the reasonableness of such fees and expenses. Any hearing on an objection to payment of any fees, costs, and expenses set forth in a professional fee invoice shall be limited to the reasonableness or necessity of the particular items or categories of the fees, costs, and expenses which are the subject of such objection. The Debtors shall timely pay in accordance with the terms and conditions of this Interim Order the undisputed fees, costs, and expenses reflected on any invoice to which a Fee Objection has been timely filed. The Debtors shall indemnify the DIP Agent and the DIP Lenders (and other applicable parties) to the extent set forth in the DIP Loan Documents, including, without limitation, as provided in Section 18.2 of the DIP Credit Agreement. All such unpaid fees, costs, expenses, charges, and indemnities of the DIP Agent that have not been disallowed by this Court on the basis of an objection filed by the United States Trustee or the Committee (or any subsequent trustee of the Debtors' estates) in accordance with the terms hereof shall constitute DIP Obligations and shall be secured by the DIP Collateral as specified in this Interim Order. Any and all fees, commissions, costs, and

expenses paid prior to the Petition Date by any Debtor to the DIP Agent or the DIP Lenders in connection with or with respect to the DIP Facility, the DIP Credit Agreement, or the other DIP Loan Documents are hereby approved in full and non-refundable.

(c)     <u>Binding Effect</u>.  Subject to Paragraph 7 above, the provisions of this Interim Order, including all findings herein, and the DIP Loan Documents shall be binding upon all parties in interest in these Cases, including, without limitation, the DIP Secured Parties, the Prepetition Secured Parties, any Committee, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary or responsible person appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors), whether in any of the Cases, in any Successor Cases, or upon dismissal of any such Case or Successor Case; <u>provided</u>, <u>however</u>, that the DIP Secured Parties and the Prepetition Secured Parties shall have no obligation to permit the use of Cash Collateral or to extend any financing to any chapter 7 or chapter 11 trustee or other responsible person appointed for the estates of the Debtors in any Case or Successor Case.

(d)     <u>No Waiver</u>.  Neither the failure of the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Interim Order, the Prepetition Secured Loan Documents, or otherwise (or any delay in seeking or exercising same), nor the failure of the DIP Secured Parties to seek relief or otherwise exercise their respective rights and remedies under this Interim Order, the DIP Loan Documents, or otherwise (or any delay in seeking or exercising same), shall constitute a waiver of any of such parties' rights hereunder, thereunder, or otherwise. Nothing contained in this Interim Order (including, without limitation,

the authorization of the use of any Cash Collateral) shall impair or modify any rights, claims, or defenses available in law or equity to any Prepetition Secured Party or any DIP Secured Party, including, without limitation, rights of a party to a swap agreement, securities contract, commodity contract, forward contract, or repurchase agreement with a Debtor to assert rights of setoff or other rights with respect thereto as permitted by law (or the right of a Debtor to contest such assertion). Except as prohibited by this Interim Order, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair, the ability of the Prepetition Secured Parties or the DIP Secured Parties under the Bankruptcy Code or under non-bankruptcy law to (i) request conversion of the Cases to cases under chapter 7, dismissal of the Cases, or the appointment of a trustee in the Cases, (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, any Chapter 11 plan or plans with respect to any of the Debtors, or (iii) except as expressly provided herein, exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) of the DIP Secured Parties or the Prepetition Secured Parties, respectively. Except to the extent otherwise expressly provided in this Interim Order, neither the commencement of the Cases nor the entry of this Interim Order shall limit or otherwise modify the rights and remedies of the Prepetition Secured Parties with respect to non-Debtor entities or their respective assets, whether such rights and remedies arise under the Prepetition Secured Loan Documents, applicable law, or equity.

(e)　　No Third Party Rights. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary. Subject to the entry of the Final Order, in determining to make any loan (whether under the DIP Credit Agreement or otherwise) or to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted

pursuant to this Interim Order or the DIP Loan Documents, the DIP Secured Parties and the Prepetition Secured Parties shall not (i) be deemed to be in control of the operations of the Debtors or (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or estates.

(f)     No Marshaling.    Neither the DIP Secured Parties nor the Prepetition Secured Parties shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as applicable.

(g)     Amendments.    The Debtors are authorized and empowered, without further notice and hearing or approval of this Court, to amend, modify, supplement, or waive any provision of the DIP Loan Documents in accordance with the provisions thereof, in each case unless such amendment, modification, supplement, or waiver (i) increases the interest rate (other than as a result of the imposition of the default rate), (ii) increases the aggregate lending commitments of all of the DIP Lenders in respect of the DIP Facility, (iii) changes the Maturity Date (as defined in the DIP Credit Agreement), or (iv) adds or amends (in any respect unfavorable to the Debtors) any Event of Default. No waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by or on behalf of all the Debtors and the DIP Agent (after having obtained the approval of the DIP Lenders) and, except as provided herein, approved by this Court. Notwithstanding the foregoing, no waiver, modification or amendment of any of the provisions of this Interim Order or the DIP Loan Documents that would directly and adversely affect the rights or interests of the Prepetition First Lien Secured Parties or the Prepetition Second Lien Secured Parties, as applicable, shall be effective unless also consented to in writing by the adversely affected Prepetition First Lien Secured Agent (on behalf of the Prepetition First Lien Secured Parties) and/or the Majority

76

Prepetition Second Lien Secured Noteholders (on behalf of the Prepetition Second Lien Trustee and the Prepetition Second Lien Secured Parties), as applicable.

(h)     <u>Inconsistency</u>.  In the event of any inconsistency between the terms and conditions of the DIP Loan Documents and of this Interim Order, the provisions of this Interim Order shall govern and control.

(i)     <u>Enforceability</u>.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Interim Order.

(j)     <u>Reservation of Rights</u>.  Nothing in this Interim Order shall be deemed to constitute the consent of the DIP Secured Parties, the Prepetition First Lien Secured Parties, or the Prepetition Second Lien Secured Parties, and each of the foregoing expressly reserve the right to object, to entry of any Order of the Bankruptcy Court that provides for the sale of all or substantially all of the assets of the Debtors to any party unless, in connection and concurrently with any such event, the proceeds of such sale are or will be sufficient to Pay in Full the DIP Obligations, the Prepetition First Lien Obligations, the Prepetition First Lien Secured Parties' Adequate Protection, the Prepetition Second Lien Obligations and the Prepetition Second Lien Secured Parties' Adequate Protection, and all of the foregoing are Paid in Full on the closing date of such sale.  The Prepetition Second Lien Trustee and the Majority Prepetition Second Lien Secured Noteholders each expressly reserve the right to object or otherwise contest the entry of a

77

Final Order approving the DIP Facility and the other relief requested in the DIP Motion on a final basis solely on the basis that such Prepetition Second Lien Secured Parties have provided a binding written commitment to the Debtors to provide debtor-in-possession financing on terms more favorable to the Debtors than those provided by the DIP Secured Parties hereunder and under the DIP Loan Documents; provided, however, such proposed debtor-in-possession financing shall only serve as a basis for such objection to entry of the Final Order if the liens and claims with respect to such proposed debtor-in-possession financing are subordinate to the DIP Liens, the Prepetition First Liens, the First Lien Adequate Protection Replacement Liens, the DIP Superpriority Claim, the First Lien Adequate Protection Superpriority Claims, and the Prepetition First Lien Obligations. In the event that the Prepetition Second Lien Secured Parties object to or otherwise contest the entry of the Final Order approving the DIP Facility and the other relief requested in the DIP Motion on a final basis, the Debtors, the DIP Agent and the Prepetition First Lien Secured Parties expressly reserve the right to object to any debtor-in-possession financing proposed by any of the Prepetition Second Lien Secured Parties and to the adequate protection proposed to be provided to any of the DIP Secured Parties, the Prepetition First Lien Secured Parties and Prepetition Second Lien Secured Parties in the Final Order or in connection with such other proposed debtor-in-possession financing, as applicable.

(k)     Headings. Paragraph headings used herein are for convenience only and are not to affect the construction of, or to be taken into consideration in, interpreting this Interim Order.

(l)     General Cooperation From Debtors; Access to Information. Without limiting any of the Debtors' other obligations in this Interim Order or the DIP Loan Documents, each Debtor shall, and shall cause its senior officers, directors and financial advisors to,

reasonably cooperate with the DIP Agent, the Prepetition First Lien Secured Agent, and the Majority Prepetition Second Lien Secured Noteholders in furnishing documents and information as and when reasonably requested by such parties regarding the DIP Collateral or the Debtors' financial affairs, finances, financial condition, business, and operations. Notwithstanding anything to the contrary contained herein, the Debtors do not waive any right to attorney-client, work product, or similar privilege, and the Debtors shall not be required to provide the DIP Agent, the Prepetition First Lien Secured Agent, the Majority Prepetition Second Lien Secured Noteholders, or their respective financial advisors with any information subject to attorney-client privilege or consisting of attorney work product.

21.    **Final Hearing**

(a)    The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for _____, 2011, at _____ (prevailing Eastern time) at the United States Bankruptcy Court for the District of Delaware. The proposed Final Order shall be substantially the same as the Interim Order except that those provisions in the Interim Order that are subject to the entry of the Final Order shall be included in the Final Order without such qualification. If no objections to the relief sought in the Final Hearing are filed and served in accordance with this Interim Order, no Final Hearing may be held, and a separate Final Order may be presented by the Debtors and entered by this Court.

(b)    Final Hearing Notice. On or before _____, 2011 the Debtors shall serve, by United States mail, first-class postage prepaid, (such service constituting adequate notice of the Final Hearing) (i) notice of the entry of this Interim Order and of the Final Hearing (the "Final Hearing Notice") and (ii) a copy of this Interim Order, on the parties having been given notice of the Interim Hearing and to any other party that has filed a request for notices with

this Court and to any Committee after the same has been appointed, or Committee counsel, if the same shall have been appointed. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Bankruptcy Court no later than _____, 2011, which objections shall be served so that the same are received on or before such date by: (a) counsel for the Debtors, Milbank, Tweed, Hadley & McCloy LLP, 601 South Figueroa Street, 30th Floor, Los Angeles, California 90017, Attn: Mark Shinderman, Esq., and One Chase Manhattan Plaza, New York, New York 10005, Attn: Karen Gartenberg, Esq.; (b) counsel for the DIP Agent and the Prepetition First Lien Secured Agent, Latham & Watkins LLP, 233 S. Wacker Drive, Suite 5800, Chicago, IL 60606, Attn: Jeffrey G. Moran and Peter P. Knight, jeffrey.moran@lw.com and peter.knight@lw.com, and Reed Smith LLP, 1201 Market Street, Suite 1500, Wilmington, Delaware 19801, Attn: Kurt Gwynne, Esq.; (c) counsel to any Committee; (d) counsel to the Prepetition Secured Second Lien Trustee, Foley & Lardner LLP, 321 North Clark Street, Suite 2800, Chicago, Illinois 60654-5313, (attn: Mark F. Hebbeln and Harold L. Kaplan); (e) counsel to the Majority Prepetition Second Lien Secured Noteholders, Schulte Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022 (attn: Adam C. Harris and David M. Hillman) and Richards Layton and Finger, One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (attn: Russell C. Silberglied); (f) counsel to the Unsecured Prepetition Agent; and (g) the Office of the United States Trustee for the District of Delaware, and such objections shall be filed with the Clerk of the United States Bankruptcy Court for the District of Delaware, in each case to allow actual receipt of the foregoing no later than _____, 2011, at 4:00 p.m. (prevailing Eastern time).

DOCS_DE:173664.1 73521-001

22.    **Retention of Jurisdiction**.  The Bankruptcy Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

Dated: _____, 2011
            Wilmington, Delaware

_____

UNITED STATES BANKRUPTCY JUDGE

DOCS_DE:173664.1 73521-001